UNITED STATES of America, Appellee,

v.

Robert William EDDY, Appellant.

No. 80-2166.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1981.

Decided Oct. 7, 1981.

Larry A. Stoller, argued, Spirit Lake, Iowa, for appellant.

James A. Morrow, argued, Asst. U. S. Atty., Dist. Minn., Minneapolis, Minn., for appellee.

Elizabeth De La Vega, Legal Intern.

Before HENLEY and ARNOLD, Circuit Judges, and FILIPPINE,* District Judge.

HENLEY, Circuit Judge.

Robert William Eddy appeals his conviction following jury trial by the United States District Court for the District of Minnesota[1] for possession with intent to distribute 326.2 grams of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). His basic contention on appeal is that certain evidence admitted at trial was improperly seized in violation of his fourth amendment rights. We affirm.

The evidence adduced at the suppression hearing before a magistrate[2] and at the subsequent suppression hearing before the district judge indicates that prior to January 23, 1980 co-defendant Bonnie Ribich had called Drug Enforcement Administration Agent Charles Lee and told him that she had some cocaine for sale. She informed Lee that he could buy some if he came to Bloomington, Minnesota.

On the morning of January 23, Lee called Ribich and arranged to meet her at a Perkins restaurant in Bloomington. At the meeting, Lee gave Ribich $1,000.00 in cash to be used for the purchase of a test sample of the narcotics. Ribich then left the restaurant after telling Lee that she was going back to obtain the sample from her source.

Ribich had been followed from her address by Officer McComb of the Bloomington Police Department and by other law enforcement officers. After Ribich left the restaurant, the officers followed her to an apartment complex at 9901 Harrison Road in Bloomington. She was seen to enter the front door of the complex, and Officer McComb attempted to follow her. He found, however, that the door to the building had a security lock, and he was therefore unable to enter the building.

McComb then made contact with the resident caretaker, identified himself as a law enforcement officer, and requested information from the caretaker. The caretaker related to McComb that she believed that a tenant in apartment 208 on the second floor was dealing in controlled substances, and that she had observed him on occasion to be under the influence of what she believed to be controlled substances. She also informed McComb that the tenant in that apartment had installed a new lock on the door to the apartment, and that she did not have a key to the new lock.

* The Honorable Edward L. Filippine, United States District Judge, Eastern District of Missouri, sitting by designation.

1. The Honorable Donald D. Alsop, United States District Judge, District of Minnesota.

2. The Honorable George G. McPartlin, United States Magistrate.

McComb obtained a passkey to the outer door of the building. He entered the building immediately prior to the time that Ribich left the building, and saw her coming from the southwest corner of the second floor, which area was in the vicinity of apartment 208. McComb, however, could not identify the apartment from which Ribich had come, although he did observe a white male adult standing at a window in the vicinity of apartment 208 looking out of the window at the time that Ribich was leaving the building.

Ribich returned to the restaurant and showed the sample to Lee. He tested it, and found that the sample was cocaine. The parties then agreed that Ribich would purchase a scale, return to the place where the narcotics were stored, weigh the narcotics, and then return to the restaurant and inform Lee of the price of the cocaine. Ribich was followed by law enforcement officers as she left the restaurant, purchased two scales, and returned to 9901 Harrison Road.

Some of the officers who had originally followed Ribich to the Harrison Road address had remained at that address and set up surveillance in a storage room on the first floor, as well as in the nearby apartment of a cooperative citizen. They watched Ribich enter the door of apartment 208 carrying two packages later identified as the scales. The door was opened by an unobserved person.

At this time, agents had discussed the situation with an Assistant United States Attorney, and they agreed that the best procedure to follow to preserve evidence and to protect the safety of the officers was to arrest Ribich as she opened the door to leave the apartment. The officers waited in the hallway, some with guns drawn. The evidence shows that at least two of the officers (all of whom were in plain clothes) affixed badges to the outside of their clothing during this wait. During this time, which was approximately fifteen to twenty minutes in length, the officers overheard a male and a female conversing in the apartment, although they could not distinguish the content of the conversation. The female was heard approaching the door to the apartment.

At this point, the testimony of the various persons conflicts somewhat. Officer McComb, the only officer who could see the door clearly from his position outside the apartment, testified that Ribich opened the door partially, so that he was able to see her in the doorway, and, beyond her, other parts of the apartment. He testified that he could see parts of Eddy's person at that time. He also testified that as he was entering the apartment, he saw Eddy rising from a kitchen chair holding a plastic bag containing a white powdery substance. Ribich testified that she was unsure whether the officers entered the apartment when she was opening the door or whether the officers entered the apartment prior to her opening the door, but while her hand was on the doorknob. Eddy testified that Ribich had not even reached the door when the officers entered the apartment. The district court, however, found that the officers entered the apartment after Ribich had opened the door. This finding, being fully supported in the record, will not be disturbed here.

Both Eddy and Ribich were arrested after the officers entered the apartment. The officers also made a sweep of the apartment in order to be certain that no one else was in the apartment, but did not thereafter investigate or search the apartment until after a search warrant had been obtained.

█■ Eddy's first contention on appeal is that the conversations between the officers and Ribich constituted entrapment, so as to make his arrest and the subsequent search of the apartment excludable. This issue, however, was neither raised nor argued before the district court, and this court will not ordinarily consider an issue not raised before the trial court unless a clear miscarriage of justice would result. *Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976). We find that no

clear miscarriage of justice will result from our refusal to consider this issue. To the contrary, an examination of the hearing transcripts indicates that this contention borders on frivolity.

 Another contention on appeal is that the warrantless entry of the apartment violated Eddy's fourth amendment rights, and that all evidence seized subsequent to that entry should therefore have been excluded. We disagree.

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that the warrantless entry of a dwelling place for the purpose of making "routine" felony arrests is unconstitutional under the fourth amendment. *Id.* at 1374–75. The Court, however, specifically stated that it had no occasion in that case to consider the sort of exigent circumstances that would otherwise justify a warrantless entry into a home for the purpose of either arrest or search. *Id.* at 1378.[3]

The appellee has asserted that two exigencies justified the warrantless entry. The first exigency asserted is that the officers reasonably feared that weapons were present in the apartment. The second exigency asserted is that the officers reasonably feared that the cocaine would have been destroyed if the arrest was not made at the time and in the manner described previously. In connection with this exigency, appellee also asserts that it was not possible to obtain a warrant prior to the entry.

We choose not to discuss the first exigency asserted because we agree with the district court that it was not reasonably possible to obtain a warrant in time to prevent removal or destruction of the evidence, and that the officers were reasonable in apprehending that such removal or destruction was likely.

When Ribich handed Lee the sample, the officers had a reasonable suspicion that a large quantity of cocaine was being held for sale in apartment 208. We note, however, that this suspicion had not yet achieved the status of probable cause because the officers had not seen which apartment Ribich had entered, and because there was no independent method for checking the veracity of the caretaker. *New Jersey v. Gagen*, 162 N.J.Super. 105, 392 A.2d 239 (1978). *See United States v. Gaultney*, 615 F.2d 642 (5th Cir. 1980), *rev'd on other grounds, sub nom. Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Rice v. Wolff*, 513 F.2d 1280, 1288 (8th Cir. 1975), *rev'd on other grounds, sub nom. Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Thus, it was not until Ribich was seen entering apartment 208 that the officers had probable cause to believe that cocaine was on the premises.

We have noted that Ribich was to have left the apartment soon after that entry in order to return to the restaurant and inform Lee of the price of the sale. At that time, Lee would have been required to pay Ribich from official funds an amount in excess of $30,000.00 and permit her to leave with it. Understandably, Lee was reluctant to see Ribich carry away so large a sum. Alternatively, Ribich could have been arrested either after she left the apartment or when she returned to the restaurant.

The officers were nevertheless reluctant to arrest Ribich immediately after she left the apartment, because someone had previously been observed watching Ribich leave the apartment complex. In view of this fact, and in view of the officers' knowledge that a new lock had been installed on the door to the apartment, we think that their reluctance was justified.

It would appear that the officers were also reasonable in fearing that the destruction of the cocaine would result if they were to arrest Ribich when she returned to the restaurant to inform Lee of the price of the cocaine. The evidence indicates a rath-

---

**3.** Our attention is called to *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). But that case likewise is not helpful to a resolution of the present issue. In *Steagald*, as in *Payton*, exigent circumstances were not present. *Id.* at 209, 101 S.Ct. at 1646.

er elaborate scheme for the distribution of the controlled substances which would have required Ribich's speedy return to the apartment with the purchase money. It is also apparent that the officers could not have obtained a search warrant prior to her expected return.[4] In these circumstances, and in view of the other evidence discussed previously, we agree with the district court that the officers' fear that Eddy would become suspicious and destroy the evidence was reasonable, and that this fear created an exigency of a nature sufficient to justify the warrantless entry and arrest. *See United States v. Kulcsar*, 586 F.2d 1283 (8th Cir. 1978); *United States v. Campbell*, 581 F.2d 22 (2d Cir. 1978); *United States v. Flickinger*, 573 F.2d 1349 (9th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978); *United States v. Busta-mante-Gamez*, 488 F.2d 4 (9th Cir. 1973); *United States v. Becker*, 485 F.2d 51 (6th Cir. 1973); *United States v. Davis*, 461 F.2d 1026 (3d Cir. 1972).

From what has been said, it follows that the arrest of Ribich was more than a mere pretext for the entry of the apartment by the law enforcement officers for the purpose of pursuing a warrantless and unjustifiable search of the premises. Moreover, Eddy's conviction rested on evidence that was in plain view when Ribich was arrested, and on evidence seized during the later search pursuant to a valid warrant.

It is settled law that objects falling in the plain view of an officer who has a right to be in a position to have that view are subject to seizure and may properly be introduced into evidence. *United States v. Jones*, 452 F.2d 884, 888 (8th Cir. 1971). It is also clear that the officers here, having lawfully entered the premises, had a right to be in a position from which they could see the evidence in plain view.[5] *See United States v. Hollman*, 541 F.2d 196, 198 (8th Cir. 1976).

Eddy's final contention on appeal is that the entry by officers who failed to identify themselves properly was unlawful and should not be upheld by this court. The district court, however, found that at least three of the officers entering the apartment yelled either "Police" or "Federal Agent" upon entering, and that at least two of the officers were wearing badges at that time. Furthermore, although law enforcement officers must normally also announce their purpose when entering a private residence, this requirement is excused when the officers are justifiably and virtually certain that the occupants already know their purpose. *United States v. Boyer*, 574 F.2d 951, 954 (8th Cir. 1978). The requirement is also excused when compliance therewith, as in this case, could result in destruction of the evidence. *United States v. Metz*, 608 F.2d 147, 155 (5th Cir. 1979). Eddy, who was seen by the entering officers holding a bag containing what was later found to be cocaine, can hardly contend that he did not know the purpose of the raid.

For the foregoing reasons, we find all of Eddy's contentions on appeal to be without merit, and we therefore affirm the judgment of the district court.

---

4. We note in passing that the search warrant that was finally obtained was not obtained until three hours after the apartment had been secured.

5. Indeed, there is some evidentiary indication that as Ribich opened the apartment door Eddy could be seen holding a bag of cocaine.