UNITED STATES of America, Appellee,

v.

Gregory J. WENTZ, Appellant.

UNITED STATES of America, Appellee,

v.

John David RODGERS, Appellant.

Nos. 81–1346, 81–1347.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1982.

Decided Aug. 25, 1982.

Rehearing Denied Oct. 14, 1982.

**654**

Rebecca Thiem Benson, Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Ltd., Grand Forks, N. D., for appellant Gregory Wentz.

Rodney S. Webb, U. S. Atty., Gary Annear, First Asst. U. S. Atty., Fargo, N. D., for appellee.

R. Lee Hamilton, Grand Forks, N. D., for appellant John Rodgers.

Before LAY, Chief Judge, MARKEY,[*] Judge, and HENLEY,[**] Circuit Judge.

HENLEY, Senior Circuit Judge.

Gregory J. Wentz and John David Rodgers appeal their convictions for various drug-related offenses in connection with the sale of a large quantity of hashish apparently imported from Syria concealed in backgammon boards. We affirm.

Because the facts in this case are fully set forth in the district court's [1] memorandum and order denying appellants' suppression motion, *United States v. Tirinkian*, 502 F.Supp. 620 (D.N.D.1980), we limit our recitation of the facts to a brief summary. On September 17, 1980 Agent Nicks of the Drug Enforcement Agency (DEA) in Grand Forks, North Dakota, was alerted by a tip from the Royal Canadian Mounted Police (RCMP) to a suspected drug transaction involving a man known as "Heimie" or "Henry" who was registered in room 118 of the local Holiday Inn. It was discovered that Henry Tirinkian was registered in that room. Maintaining a 24-hour surveillance, agents observed a man later identified as Wentz visit Tirinkian's room on September 20. A check of Wentz's record revealed a prior hashish conviction in Denmark. Wentz, driving his pick-up truck with a camper on the back, was later followed to the Gallery Apartments, where agents saw him enter Building E. After a short time, a man was noticed leaving Building E and driving away in a 1964 green Pontiac.

Meanwhile, the DEA learned that the RCMP's tip was based on wiretapped phone conversations in Canada and Austria. The

---

\* Howard T. Markey, Chief Judge, U. S. Court of Customs and Patent Appeals, sitting by designation.

\*\* Judge Henley assumed senior status June 1, 1982.

1. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

DEA was further advised that Trevor Baird was expected to arrive in Grand Forks as a representative of Bruce Erven, who was under investigation by Canadian and Austrian authorities.

A man matching the description of Baird arrived at the Grand Forks airport in the evening of September 20, and checked into room 103 of the Holiday Inn under the name of "T. B. Davies." Later that evening he went to Tirinkian's room where agents overheard him say, "Henry, I am Trevor Baird. I was sent by Bruce Erven." Baird subsequently left Tirinkian's room with Wentz and, in the early hours of September 21, went to a house at 1105 23rd Avenue S., where the 1964 Pontiac, seen earlier at the Gallery Apartments, was parked in the driveway. Walking past the house, agents heard the sound of a power saw, ripping wood, and hammering. Later that day, Wentz and Baird were seen loading boxes, garbage bags, and a gun case in the cargo area of Wentz's truck. Also during the day, a man later identified as Rodgers was observed leaving and later returning in the 1964 Pontiac. Leaving Baird at the house, Wentz picked up Tirinkian at the Holiday Inn and drove to the airport. The decision was made to arrest Wentz and Tirinkian and, when Wentz parked at the terminal, agents blocked his exit. Although there was some conflicting testimony concerning the precise sequence of events during the next few minutes, the district court found that the agents detected the odor of hashish as they approached the truck to make the arrest. Pursuant to searches incident to arrest, agents found $26,000.00 in Canadian and American currency on Tirinkian and a quantity of hashish and heroin on Wentz.

At the time of Wentz's and Tirinkian's arrests, officers noticed broken pieces of inlaid wood in plain view in the cargo area of the truck. One of the agents then remembered receiving information that during one of the wiretapped conversations the speaker, in response to a question about the method of shipment, said something to the effect that "if you cut it carefully, you could make a nice Chinese room." Another officer connected the broken pieces of wood to a shipment of one hundred eighty inlaid backgammon boards, which had been shipped air freight from Syria, and were picked up by the consignee, Rodgers, after clearing customs.

Suspecting that the drug transaction had been completed and fearing that Rodgers and Baird would become suspicious when Wentz failed to return from the airport, Agent Nicks decided to secure the house. After knocking on the door and announcing their authority, agents entered the house and arrested Rodgers and Baird. During a cursory search of the house for other occupants, a quantity of hashish was found in plain view in the basement.

Pursuant to subsequently obtained warrants, agents searched the house, Wentz's truck, the 1964 Pontiac, the Gallery apartment where Wentz was staying, and room 103 of the Holiday Inn. A quantity of contraband was seized as a result of these searches.

All four defendants were charged with possession with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiracy to commit the substantive offense, 21 U.S.C. § 846. Rodgers was also charged with illegal importation. After a nine-day jury trial, Wentz was found guilty on both counts. Rodgers was acquitted of the importation charge but was convicted of conspiracy and of simple possession.

Appellants challenge their convictions on three grounds: (1) the trial court erred in denying their motion to suppress certain evidence; (2) the trial court erred in admitting into evidence a composite tape of several wiretapped conversations; and (3) the trial court erred in refusing to grant a new trial for prosecutorial misconduct.

## I. SUPPRESSION

Appellants contend that the district court erred in denying their motions to suppress evidence seized pursuant to their arrests and to the subsequently obtained search warrants. *United States v. Tirinkian, supra.* Although individually tailored to re-

flect the applicable standing considerations, see *Word v. United States*, 604 F.2d 1127, 1129 (8th Cir. 1979), appellants' arguments are based on the assertions that there was not probable cause for Wentz's arrest; that there was neither probable cause nor exigent circumstances justifying the warrantless entry into Rodgers' house; and that the affidavit supporting the search warrants contained deliberate misstatements as well as "fruits" of Wentz's illegal arrest and the unlawful entry into Rodgers' house.

### A. Wentz's Arrest

█ Probable cause for a warrantless arrest "is to be assessed in terms of the circumstances confronting a reasonably cautious and prudent police officer at the time of the arrest." *United States v. McGlynn*, 671 F.2d 1140, 1143–44 (8th Cir. 1982). *See United States v. Luschen*, 614 F.2d 1164, 1171 (8th Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980); *United States v. Neumann*, 585 F.2d 355, 357 (8th Cir. 1978). However, when the officers' belief rests in large part on an informant's tip there must be disclosed both the circumstances underlying the informant's knowledge, and the circumstances underlying the officer's belief in the informant's reliability.[2] *United States v. Neumann*, 585 F.2d at 357–58.

The district court found that the reliability of the tip in the present case was established by the status of the RCMP as a law enforcement agency, *cf. United States v. Stevens*, 509 F.2d 683, 687 n.6 (8th Cir.), *cert. denied*, 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975) (officer entitled to consider information transmitted over police radio trustworthy), and by the corroboration of information obtained through independent investigation.[3] *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d

327 (1959). The court also found that the disclosure of the RCMP's reliance on wiretapped conversations sufficiently demonstrated the circumstances underlying the informant's knowledge. *Cf. United States v. Wixom*, 460 F.2d 206, 208 (8th Cir. 1972) (insufficient evidence of probable cause where "no showing as to how the informant . . . came by his knowledge").

The district court's finding of probable cause for the warrantless arrest of Wentz, 502 F.Supp. at 626–27, must be upheld unless clearly erroneous. *United States v. McGlynn*, 671 F.2d at 1143, *and cases cited therein*. The agents' belief that probable cause existed to arrest Wentz and Tirinkian was based on a tip from the RCMP that information obtained from wiretapped conversations indicated that a hashish transaction would take place involving a man possibly known as "Henry" who was registered in room 118 of the Holiday Inn, and that Trevor Baird would arrive as Bruce Erven's representative with $20,000.00 to $30,000.00. In addition, independent investigation disclosed, among other things, that Henry Tirinkian was registered in room 118, that he was visited by Wentz who had a prior hashish conviction in Denmark, that a man matching Baird's description registered as "T. B. Davies," that Baird introduced himself to Tirinkian as Bruce Erven's representative, and that sounds of sawing and hammering were heard coming from Rodgers' house at unusual hours of the night. Moreover, the existence of probable cause is strongly supported by the court's finding that the agents smelled hashish as they approached Wentz's truck to make the arrest.

█ We conclude that the district court did not clearly err in finding probable cause to arrest Wentz, and that the search incident to his arrest was therefore valid.

**2.** This is the so-called *Aguilar-Spinelli* test. *See Spinelli v. United States*, 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–589, 2 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964).

**3.** It is asserted that surveillance revealed only innocent activities. Baird's registration under a false name, however, is at least suspect, and,

at any rate, this court has recognized that arguably innocent acts can be significant to a trained officer and that the officer is entitled to assess probable cause in light of his experience. *United States v. McGlynn*, 671 F.2d at 1144. *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

### B. Warrantless Entry into Rodgers' House

Appellants contend that neither probable cause nor exigent circumstances justified the warrantless entry into Rodgers' house.[4] Having concluded that Wentz's arrest was legal, we think it is indisputable that the entry was supported by probable cause. As a result of Wentz's arrest, the agents had, in addition to the information establishing probable cause to arrest Wentz and Tirinkian, evidence linking Rodgers to the shipment of backgammon boards from Syria.

A warrantless entry, however, must be justified not only by probable cause but also by exigent circumstances. *See United States v. Williams*, 633 F.2d 742, 744 (8th Cir. 1980). The district court applied the factors set forth in *United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir. 1978), and found that the agents had reason to believe that the drug transaction had been completed; that Rodgers and Baird were in the house and would grow suspicious when Wentz failed to return from the airport; and that the house contained contraband which would then be in danger of destruction or removal. 502 F.Supp. at 628–29. *See United States v. Eddy*, 660 F.2d 381, 384–85 (8th Cir. 1981). The trial court also noted that Agent Nicks' attempt to complete an affidavit and obtain a warrant was interrupted by the arrests of Wentz and Tirinkian, and was further hindered by the difficulty of locating a judge or magistrate to authorize the warrant.[5]

As with the finding of probable cause for arrest, our review of a district court's finding of exigent circumstances is limited by the clearly erroneous standard.

*See United States v. Jones*, 635 F.2d 1357, 1360 (8th Cir. 1980). We find no clear error in the court's determination that the warrantless entry into Rodgers' house was justified by exigent circumstances.

### C. Sufficiency of Affidavit

Because the RCMP had requested that the secrecy of their ongoing investigation be protected, Agent Nicks referred to his informant in the affidavit as a confidential source.[6] The affidavit recited the information received from the RCMP that a hashish transaction was expected to occur involving the occupant of room 118 at the Holiday Inn, and detailed the information obtained as a result of independent investigation and the arrests of Wentz and Tirinkian. *See United States v. Tirinkian*, 502 F.Supp. at 625–26.

The district court found that the tip, as described in the affidavit, failed to meet the *Aguilar-Spinelli* test[7] because it failed to specify the circumstances underlying the informant's knowledge, that is, the wiretapped conversations, *see Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 2 L.Ed.2d 637 (1969), and because it was not sufficiently detailed to be cured by corroboration. *Draper v. United States, supra.* However, the court upheld the affidavit on the ground that the results of independent investigation described in the affidavit " 'permit[ted] the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed.' " 502 F.Supp. at 630–31, *quoting Spinelli v. United States*, 393 U.S. at 418, 89 S.Ct. at 590. *See United States v. McGlynn*, 671 F.2d at 1145.

In view of the principle that an issuing judge's determination of probable cause

---

4. We note that apparently no evidence was seized at this time and that the only information appearing in the affidavit which was obtained as a result of the entry was the identity of Rodgers as the man seen driving the Pontiac.

5. The arrests of Wentz and Tirinkian and the entry into Rodgers' house occurred on a Sunday. Warrants were finally obtained later that day.

6. We hold that the district court did not err in finding that Agent Nicks' description of the RCMP as a confidential source was not a false material statement. 502 F.Supp. at 630 n.10, *citing Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

7. *See* note 2 *supra and accompanying text.*

is entitled to great deference, *United States v. McGlynn*, 671 F.2d at 1146, we find no basis for invalidating the search warrants in the present case. The detailed recitation of evidence and information obtained pursuant to surveillance, investigation, and Wentz's and Tirinkian's arrests,[8] provides a sufficient showing of probable cause, especially when considered in connection with the tip that a drug transaction was expected to occur.

## II. COMPOSITE TAPE OF WIRE-TAPPED CONVERSATIONS

Appellants contend that the trial court erred in admitting, over objection, a composite tape of several conversations which were recorded in Austria and Canada pursuant to phone taps authorized by Austrian and Canadian courts. With the exception of Tirinkian, none of the defendants in this case was a participant in these calls.

Objections to admission of the tape were based on hearsay, relevance, and the sixth amendment right to confrontation. The district court admitted the tape as evidence of verbal acts demonstrating the scope of the conspiracy.[9] *See United State v. Boyd*, 566 F.2d 929, 937 (5th Cir. 1978). The jury was instructed that the tape was admitted to show that the conversations took place and was not to be considered as proof of any matters asserted therein.

Appellants argue that regardless of the court's analysis, the tape was in fact treated as substantive evidence by the prosecutor who allegedly referred to the contents of the tape on several occasions during the trial. It is further contended that the tape was inadmissible as substantive evidence because it did not meet the requirements of the coconspirator exception to the hearsay rule; that is, there was no independent finding that the declarants were coconspirators. *See United States v. Bell*, 573 F.2d 1040, 1043–45 (8th Cir. 1978).

In denying appellants' motions for new trial, the district court observed that the evidence referred to by the prosecutor which was mentioned in the conversations, for example, the sum of $20,000.00, was also introduced through other means. Thus, appellants suffered little prejudice, if any, whether the tape was treated as substantive evidence or as verbal acts.

We are more concerned with the question of relevancy because, assuming the tape was properly admitted as verbal acts, we find little in the tape which links the conversations to a conspiracy involving Wentz or Rodgers. Indeed, it is somewhat difficult to clearly connect the conversations to this particular drug transaction at all. Neither Wentz nor Rodgers was mentioned. Nor was any specific reference made to hashish or to the details of the transaction. Rather, the tape reveals only vague and ambiguous statements such as references to shipments of "carpets" and "pistachios," and Erven's response to a question concerning "coin" that he had "over twenty." The clearest link is provided by Tirinkian's call giving his room and phone number at the Holiday Inn.

■ However, considering the weight of the other evidence at trial, we do not think appellants were significantly prejudiced by the admission of the tape, and conclude that the trial court did not commit reversible error in admitting the tape, *see United States v. Hoppe*, 645 F.2d 630, 632 (8th Cir.), *cert. denied*, 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981), or in denying appellants' motions for mistrial or new trial. *See United States v. Conzemius*, 611 F.2d 695, 696 (8th Cir. 1979).

## III. PROSECUTOR'S MISCONDUCT

■ We have reviewed appellants' remaining claims of prosecutorial misconduct based on (1) the prosecutor's reference in

---

8. Our determination that Wentz's arrest was legal obviates the necessity of discussing appellant's contention that the affidavit contained "fruits" of his unlawful arrest.

9. Because the tape was admitted for this limited purpose, the court found appellants' sixth amendment right to cross-examine inapplicable. *See United States v. Williams*, 604 F.2d 1102, 1118 (8th Cir. 1979).

his opening statement to the heroin found on Wentz's person after his arrest, (2) an apparent misquote by an agent of a statement made by Tirinkian after his arrest, and (3) the failure of the government to disclose before trial an allegedly exculpatory photograph of Wentz. We do not think that any or all of these claims can support a finding that the trial court abused its discretion in denying appellants' motions for mistrial and new trial.

■ Finally, we find Rodgers' contention that his conviction for conspiracy is unsupported by the evidence without merit.

The judgment of the district court is affirmed.