UNITED STATES of America, Appellee,

v.

Richard PALUMBO, Appellant.

No. 83–2153.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1984.

Decided June 7, 1984.

Rehearing Denied July 17, 1984.

Richard B. Marx, Miami, Fla., for appellant.

Thomas E. Dittmeier, U.S. Atty., Kevin F. O'Malley, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, BRIGHT and McMILLIAN, Circuit Judges.

BRIGHT, Circuit Judge.

Richard Palumbo appeals from his conviction, after a bench trial,[1] of conspiracy to distribute cocaine and possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1). We affirm.

Palumbo makes two allegations of error on appeal: (1) that the district court erred in admitting into evidence cocaine seized from his hotel room by law enforcement officers upon a non-consensual, warrantless entry; and (2) that the evidence failed to establish that Palumbo formed the necessary specific intent to commit the crimes charged because he allegedly suffers from a mental disease or defect as a result of an illness and the medication prescribed therefor.

I. *Background.*

For approximately sixteen years, Palumbo has suffered from ulcerative colitis, a serious systemic disease involving non-specific inflammation of the colon and the rectum. The predominant symptoms are gastrointestinal—abdominal pain, cramps, nausea, vomitting, loss of appetite, weight loss, and diarrhea. He takes, and has for many years, heavy doses of steroids to treat his condition.

The transaction leading to Palumbo's arrest and conviction had its beginnings in December of 1981 in Missouri. Palumbo's co-defendant, Gary Millner, went to the home of a friend, Byron Valier, to get some cocaine. While he was there, Millner told Valier that he had a source for cocaine in Florida. Nothing developed as a result of this conversation until March of 1982, when Valier, who was by then cooperating with government agents, went to Florida for a vacation. He contacted Millner, who had since moved to Florida, and asked him to arrange a meeting with his source. Valier, Millner, and Palumbo met on March 19, 1982, to arrange a sale. Palumbo agreed to deliver a quantity of cocaine to Valier in St. Louis and allow Valier, or his ultimate buyer, to examine it before purchasing it.

Millner and Palumbo arrived in St. Louis on April 16, 1982, and arranged with Valier to complete the sale the next day. The following morning, Millner called Valier and instructed him to come to Room 678 alone at noon with his money. When Valier entered Room 678, he was, unbeknownst to Palumbo and Millner, wearing a device to transmit their conversation to agents listening in another room. After showing Valier the cocaine, Palumbo gave a sample to Valier and Millner, who were to take it to Valier's buyer waiting in another room, allow him to inspect it, and return with the money. As Valier and Millner opened the door to leave, law enforcement officers announced their presence and, with badges displayed and weapons drawn, entered the room and arrested Millner and Palumbo. After learning from Valier where Palumbo hid the cocaine, the officers retrieved it from behind a dresser drawer.

II. *Discussion.*

A. *Search and Seizure.*

Palumbo argues that the district court erred in refusing to suppress the cocaine seized from his hotel room because (1) exigent circumstances did not justify the officers' non-consensual, warrantless entry, and (2) the warrantless search was not justified as a search incident to arrest. After reviewing the testimony at the suppression hearing, we conclude that the district

---

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

court's decision to deny Palumbo's motion to suppress was not clearly erroneous.

### 1. *Exigent Circumstances.*

■ The officers originally planned that Valier would go to Palumbo's hotel room, get the cocaine sample, and take it alone to Room 684, where his "buyer," Detective Zambo, was waiting. Zambo, carrying the money to "complete the transaction," would then return to Palumbo's room with Valier to make the arrests. While Valier was in Palumbo's room, however, the officers learned, via the transmitter on Valier, that Millner intended to accompany Valier to Room 684 to get the money. This posed a problem for the officers. Because Zambo could not actually give Millner the money, he would be forced to arrest Millner in Room 684. The officers feared, however, that Palumbo would become suspicious when Millner failed to return in a short time and would destroy or remove the cocaine before they could obtain a warrant for his arrest. Their only alternative, they believed, was to arrest both Millner and Palumbo as Valier and Millner opened the door to leave. We believe that the officers' fear that Palumbo would become suspicious and destroy the cocaine was reasonable, and created an exigency sufficient to justify the warrantless entry and arrest. *See United States v. Wentz,* 686 F.2d 653, 657 (8th Cir.1982); *United States v. Eddy,* 660 F.2d 381, 384 (8th Cir.1981).

■ . That the officers might have obtained a warrant before going to the hotel is not fatal to the finding that exigent circumstances justified their entry. The officers were conducting an ongoing investigation, and were not required to seek a warrant as soon as they had probable cause to suspect a conspiracy to distribute cocaine. Rather, they could legitimately wait in order to gather additional evidence of conspiracy and to establish probable cause for the possession offense. *See United States v. Hultgren,* 713 F.2d 79, 87

(5th Cir.1983). That the exigency might have been foreseeable does not invalidate the entry and arrest. The important point is that the exigency, while perhaps not unexpected, was not created by the officers. *Id.* at 88.

### 2. *Search Incident to Arrest.*

■ Palumbo also contends that even if exigent circumstances justified the officers' entry, their subsequent search was not justified as a search incident to arrest. Palumbo argues that the cocaine, hidden behind a dresser drawer, was inaccessible to him because he was handcuffed and in the presence of several officers. The record does not unequivocally support this assertion. Detective Zambo's testimony at the suppression hearing indicates that Palumbo was not handcuffed when the officers retrieved the cocaine from behind the drawer within an arm's reach from where Palumbo sat. Moreover, accessibility, as a practical matter, is not the benchmark. The question is whether the cocaine was in the area within the immediate control of the arrestee within the meaning of *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). This rule defines the area which may be searched, and is not constrained because the arrestee is unlikely at the time of the arrest to actually reach into that area. *See New York v. Belton,* 453 U.S. 454, 459–60, 101 S.Ct. 2860, 2863–64, 69 L.Ed.2d 768 (1981) (police may search passenger compartment of car after police have ordered passenger to leave the vehicle); *United States v. Sanders,* 631 F.2d 1309, 1313 (8th Cir.1980).

### B. *Diminished Responsibility.*

■ At trial, Palumbo sought to establish the defense of diminished responsibility, introducing expert testimony that steroids can cause psychotic behavior and that Palumbo, because of the steroids, suffered from a mental impairment that adversely affected his ability to formulate the requi-

site intent. The district court rejected his defense, concluding that Palumbo suffered from no serious mental disease or disorder and had the capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the law. The district court determined, beyond a reasonable doubt, that Palumbo knowingly, willfully, and intentionally agreed to distribute cocaine and knowingly, willfully, and intentionally possessed cocaine with intent to distribute.[2]

Ample evidence supports the district court's determination. The crimes charged involved a transaction which occurred over a period of a month. In handling the transaction, Palumbo conducted himself in a rational and businesslike manner. When he met with Valier in Florida, he worked out the details of the transaction, required payment in cash, discussed the physical attributes of the cocaine he was to sell, and assured Valier as to the quality of his intended purchase. In St. Louis, he continued to orchestrate the transaction. Palumbo registered at the Stouffer's Riverfront Inn and paid for the room. When Valier came to Room 678, Palumbo showed him the cocaine under a Panasonic light scope, discussed its quality, and scraped off a sample for Valier to take to his buyer. He also figured the purchase price of the cocaine, given the quantity for sale and the agreed-upon price.

The arrangement required Palumbo to obtain cocaine and transport it from Florida to Missouri without detection by authorities. The evidence indicates that potential detection concerned Palumbo, and that he took precautions to avoid detection. Before agreeing to meet with Valier, Palumbo asked Millner for assurances that Valier was not a police officer. He transported the cocaine by car rather than by plane because of the danger of detection in airports. On the way to St. Louis, he did not exceed the speed limit, which was unusual according to Millner, and had a radio in the car to detect police surveillance. As they waited at the hotel to complete the transaction, Palumbo asked Millner for a description of Valier's car and watched for Valier's arrival from the window. In addition, he insisted that only Valier, and not Valier's ultimate purchaser, come to Room 678 to complete the transaction. In light of this evidence, the court did not err in concluding that Palumbo had the requisite intent to commit the crimes charged.

Affirmed.

McMILLIAN, Circuit Judge, concurring.

I fully agree with the majority opinion's analysis of Palumbo's steroid psychosis—diminished responsibility defense. I do not agree with the majority opinion's analysis of the fourth amendment issues and write separately only to set forth my position. However, even assuming that the warrantless arrest was not justified by exigent circumstances or that the cocaine was not seized from an area within the defendants' immediate control, I think the failure to suppress was harmless error. Accordingly, I concur in the affirmance of the judgment of the district court.

First, I agree that the government agents were not required to seek an arrest or search warrant as soon as they had probable cause to suspect a conspiracy to distribute cocaine. "[T]he government may [delay an arrest] in the hope of ferreting out any hitherto unknown individuals involved in the illicit undertakings, gathering additional evidence substantiating the crimes believed to have been committed, or discovering any other offenses in which the suspects are involved." *United States v. Hultgren*, 713 F.2d 79, 87 (5th Cir.1983). *Cf. Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("routine"

---

**2.** Palumbo asserts that the district court addressed an insanity defense rather than one of diminished responsibility. We disagree. The district court rejected the insanity defense and expressly found that the evidence established that Palumbo possessed the requisite intent necessary to establish his guilt.

felony arrest following investigation). *See generally* 2 W. LaFave, Search and Seizure § 6.1, at 391–92 (1978 & Supp.1984). However, the ongoing nature of the investigation is only one factor to be considered in determining the reasonableness of the warrantless arrest. *United States v. Hultgren*, 713 F.2d at 87. Another factor to be considered in determining reasonableness is the opportunity to obtain a warrant. *See Vale v. Louisiana*, 399 U.S. 30, 40, 90 S.Ct. 1969, 1975, 26 L.Ed.2d 409 (1970) (Black, J., dissenting). Here, the agents' knowledge of the conspirators' plan was accurate and relatively complete at least several hours before the transaction was to occur; this was not a rapidly developing situation.

I am not satisfied with the government's justification for the warrantless arrest. The articulated precipitating cause of the exigent circumstances in the present case was the government agent's inability to transfer the buy money to Millner,[1] which would have forced the agents to arrest Millner in the agents' hotel room. Millner's failure to return to Palumbo's hotel room with the money would have made Palumbo nervous and caused him to destroy or remove the cocaine before the agents could obtain a warrant. I do not doubt that this is a plausible sequence of events. However, in my opinion, the agent's understandable anxiety about the transfer of the money alone cannot justify the warrantless arrest. The agent's inability to transfer the money, although admittedly not "created" by the government in the sense that it was not purposely arranged, would be characteristic of a drug investigation where the actual transaction is effected through a third party. I would

distinguish the circumstances in the present case from those in *United States v. Hultgren*, 713 F.2d at 87, in which the unexplained failure of a transmitter worn by the government informer during the transaction created the genuine concern that the informer had been discovered and that his life and those of the agents conducting the surveillance were in danger.[2]

For these reasons I would conclude that the warrantless arrest was not justified by exigent circumstances and would hold that the district court erred in failing to suppress all the evidence seized as a result, including the cocaine.

Alternatively, assuming that the warrantless arrest was justified by exigent circumstances, I would remand the immediate control question to the district court for additional findings and further consideration. I agree that the critical question is whether the cocaine was in an area within Palumbo's "immediate control." After reviewing the record, however, I think several points which are material to the question of immediate control were not considered by the district court. For example, Professor LaFave suggests that "the relevant facts are those which show (i) what places it would be *possible* for the arrestee *presently* to reach, and (ii), perhaps of somewhat lesser importance, how *probable* it is that the arrestee would undertake to seek means of resistance or escape or to destroy evidence," 2 W. LaFave, Search and Seizure § 6.3, at 415 (emphasis in original, footnote omitted), and outlines the following factors as relevant to the question of where it would be possible for the arrestee to reach:

> the home invaded was [that of a third party], the arrest was precipitated amidst an ongoing investigation and its attendant uncertainties, the period of time which elapsed before the exigent circumstances arose was relatively short, and the precipitating factors for the arrest [, while not unexpected,] were not deliberately created by the government.

---

**1.** *Cf. United States v. Joyce*, 693 F.2d 838, 840 (8th Cir.1982) (reference to Drug Enforcement Administration guidelines prohibiting transfer of illegal drugs into physical possession of persons under investigation).

**2.** The court in *United States v. Hultgren*, 713 F.2d 79, 88 (5th Cir.1983), concluded that the district court had properly found that exigent circumstances justified the warrantless arrests after considering the following factors:

(1) Whether or not the arrestee was placed in some form of restraints....

(2) The position of the officer vis-a-vis the defendant in relation to the place searched....

(3) The ease or difficulty of gaining access within the container or enclosure searched. Certainly "the accessibility of the searched area" should be taken into account....

(4) The number of officers present in relation to the number of arrestees or other persons. Because "the physical control of the situation exercised by the police" is an important consideration, it is most relevant to take account of the number of police officers on the scene.

*Id.* at 415–16 (footnotes omitted).

In the present case it is unclear from the record whether the defendants were handcuffed at the time of the search; if so, whether they were handcuffed with their hands behind their backs, a position of restraint which would make any use of the hands much more difficult; whether the defendants were seated on the floor or in chairs or on the beds; how many agents were in the hotel room; and where the agents were positioned in relation to the defendants and the dresser. In addition, the record clearly indicates that the cocaine was *taped behind* the dresser drawer, a factor which limited its accessibility to even a desperate arrestee. For these reasons, I would remand the immediate control question to the district court for additional findings and further consideration.

However, even assuming that the evidence seized[3] should have been suppressed, either because the warrantless arrest was not justified by exigent circumstances or, if the arrest was lawful, because the search was not of an area within the defendants' immediate control, I would conclude that the failure to suppress was harmless error. This was a bench-tried case. The remaining evidence overwhelmingly supports the district court's finding that Palumbo was guilty of conspiracy to distribute and possession with intent to distribute. The government investigation was substantially complete *before* the warrantless arrest and seizure of the cocaine, and the government informant, Palumbo's co-conspirator Millner and one of the government agents testified about the conspiracy, Palumbo's involvement in the conspiracy and his possession of the cocaine. Moreover, although the cocaine and other items indicative of drug transactions were physical evidence which connected Palumbo to the criminal conduct charged, possession of the cocaine at the time of the seizure is not an essential element of the crime of conspiracy to distribute cocaine. *Cf. United States v. Byers,* 600 F.2d 1130, 1132 (5th Cir.1979) (possession of marijuana at the time of the seizure is not an essential element of the crimes of conspiring to possess marijuana with the intent to distribute it or of conspiracy to import marijuana with the intent to distribute it). Similarly, although possession of the cocaine is an essential element of the crime of possession with intent to distribute, the government does not have to introduce the cocaine itself to establish possession.

Accordingly, I concur in the affirmance of the judgment of the district court.

---

3. If the arrest was unlawful, all the evidence seized from the hotel room and from Palumbo's person should have been suppressed. If the arrest was lawful, all the evidence except the cocaine, which was not in plain view or in an area within the defendants' immediate control, was lawfully seized incident to arrest or in plain view.