UNITED STATES of America, Appellee,

v.

Kenneth CLEMENT, Appellant.

No. 87–2651.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1988.

Decided Aug. 25, 1988.

George F. Taseff, Bloomington, Ill., for appellant.

Debra Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before BEAM, Circuit Judge,
BRIGHT and SNEED,* Senior Circuit Judges.

PER CURIAM.

Kenneth Clement appeals his conviction for conspiracy to distribute cocaine, possession with intent to distribute cocaine, distribution of cocaine, and possession of a firearm by a convicted felon. He argues that the evidence on which his conviction was based should have been suppressed because it was obtained through government agents' warrantless and nonconsensual forced entry of his hotel room. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

The government and Clement substantially agree as to the facts of the case. They differ, however, as to the legal relevance of those facts. On February 6 and

February 23, 1987, undercover Drug Enforcement Agency (DEA) agents made cocaine purchases from Sam Stephenson and William McDade. The agents subsequently negotiated with Stephenson and McDade to purchase five kilograms of cocaine in St. Louis, Missouri, on February 27, 1987.

Around 11:00 a.m. on February 27, 1987 two of the agents met with Stephenson in his hotel room, room 512, at the Airport Holiday Inn in Bridgeton, Missouri. Stephenson told the agents that men named Kenneth and Juan would be bringing the cocaine to St. Louis on a flight from Miami later that day. During the meeting Stephenson called Kenneth in Miami and one of the agents spoke to him. Kenneth told the agent that he and Juan were having trouble obtaining the full five kilograms. The agent told Kenneth to bring what he had on the flight that day. After meeting was over, the agents discovered that Stephenson and McDade had moved to rooms 312 and 314 of the Holiday Inn. The agents set up surveillance in nearby rooms.

Later that night, at 10:55 p.m., DEA agents stationed at the airport observed Kenneth Clement, his wife, and a man later identified as Juan Sastre arrive on a flight from Miami. After claiming their baggage, they proceeded to the Holiday Inn and checked into room 306.

At 12:15 a.m., Stephenson and McDade were seen entering and then leaving room 306. Stephenson and McDade then drove to the Marriott hotel and entered room 3057. They were arrested there at 12:30 a.m. after attempting to sell two kilograms of cocaine to the undercover agents.

The DEA agents then returned to the Holiday Inn and went to room 306 at 1:15 a.m. Apparently anticipating a forced entry, they had a sledgehammer in their possession that they had brought to the hotel at 11:30 a.m. the previous day. They did not have a warrant to arrest anyone or to search the room. Agent Luss knocked on the door of room 306, announced that they were federal drug enforcement agents, and

* The Honorable Joseph T. Sneed, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

demanded entry. He then looked through the peephole on the outside of the closed door. He later testified as follows about the ensuing events:

Q. Who came to the door?

A. I don't know who came to the door. Someone looked out of the door and darted from the door. And there was some noise, some scrambling around in there, at which time we forced open the door.

.    .    .    .    .

Q. And what was it you observed?

A. Well, I observed an eyeball peek through the door and some noise take place then. That's all.

Q. Would you explain how that happened?

A. ... A subject came to the door; peeped through the peephole; and started running; left the door. I don't know if he ran. And I heard some noise in the room. At that point we force open the door with the use of a sledgehammer.

Transcript of Pretrial Motions Hearing Before U.S. Magistrate (M.T.) at 11, 26–27. After the forced entry, the agents arrested Clement and his wife and seized handguns registered to Clement, cocaine, scales, money, and a plane ticket in the name of Juan Suarez. Agent Luss looked out the sliding glass doors and saw a box lying on the ground below the room. The box contained cocaine. Juan Sastre, who apparently had fled through the sliding glass door, was later found hiding in another room in the hotel.

A suppression hearing was held in front of a United States Magistrate. At this hearing, Clement called Joan Lodl, a security investigator to testify about conditions at the hotel where Clement had been arrested. She testified that from outside the room looking through the peephole she was unable to make out a person "in any distinguishable form." M.T. at 36. On cross-examination, she admitted that in the period between the arrest and her investigation that the room had been remodeled and the peephole replaced with another.

On May 28, 1987, the United States Magistrate recommended that Clement's motion for suppression of evidence and statements

be denied. The district court adopted the Magistrate's recommendation and denied Clement's motion to suppress.

On August 5, 1987, Clement waived his right to trial by jury and the parties agreed to submit the case to the district court on a written stipulation of the government's evidence. On October 23, 1987, the district court found Clement guilty of conspiracy to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and 846, possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), distribution of cocaine, 21 U.S.C. § 841(a)(1), and possession of a firearm shipped or transported in interstate commerce by a convicted felon, 18 U.S.C. § 922(g)(1). On November 30, 1987, the district court sentenced Clement to nine years in prison on each of the drug counts and five years on the weapons count, the sentences to run concurrently. This appeal was timely filed per Fed.R.App.P. 4(b) on December 7, 1987.

## II.

## JURISDICTION

The jurisdiction of the district court was founded upon 18 U.S.C § 3231. This court's jurisdiction rests upon 28 U.S.C. § 1291.

## III.

## STANDARD OF REVIEW

■ We review denial of motions to suppress evidence obtained in warrantless searches by a claim of exigent circumstances under the clearly erroneous standard. *United States v. Knobeloch*, 746 F.2d 1366, 1367 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985); *United States v. Wentz*, 686 F.2d 653, 657 (8th Cir.1982).

## IV.

## DISCUSSION

■ Under *Payton v. New York*, 445 U.S. 573, 576, 590, 100 S.Ct. 1371, 1374, 1382, 63 L.Ed.2d 639 (1980), in addition to having probable cause, police must obtain a

warrant before making a felony arrest in the home of a suspect unless there are exigent circumstances. We have noted in the past that "the protections against warrantless intrusions into the home in *Payton v. New York* apply with equal force to a properly rented hotel room during the rental period." *United States v. Rambo*, 789 F.2d 1289, 1295 (8th Cir.1986) (citation omitted); *see United States v. Morales*, 737 F.2d 761, 764–65 (8th Cir.1984).

■ Exigent circumstances may provide a basis for a warrantless entry. However, the exigent circumstances exception to the warrant requirement is narrowly drawn. *See Johnson v. United States*, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). It is not necessary to obtain a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed. *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967); *Ker v. California*, 374 U.S. 23, 42, 83 S.Ct. 1623, 1634, 10 L.Ed.2d 726 (1963). But in *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984), the Supreme Court stated that "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." And in *United States v. Selberg*, 630 F.2d 1292, 1295 (8th Cir.1980), we said "the burden is on the state to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness of the officer's belief that exigent circumstances existed."

■ The government here argues that the DEA agents' fear that the evidence was in danger of destruction constitutes the necessary basis for the warrantless entry. It relies primarily upon our decision in *United States v. Knobeloch*, 746 F.2d 1366 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985), the facts of which are quite similar to those before us. There, as here, the officers were confronted with the likelihood that the defendant, upon becoming aware that a deal had gone sour, would destroy the evidence. We have held that "[t]he presence of evidence reasonably believed to be in imminent danger of removal or destruction is well recognized as a circumstance which may permit immediate police action." *United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir.1978); *see United States v. Wentz*, 686 F.2d 653, 657 (8th Cir.1982). While it is true that police officers must "demonstrate a sufficient basis for an officer to believe that somebody in the residence will likely destroy evidence," *United States v. Beck*, 662 F.2d 527, 530 (8th Cir. 1981), they need not, however, wait until the evidence is in the process of being destroyed before entering the residence. *United States v. Blake*, 484 F.2d 50, 55 (8th Cir.1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974). In sum, the circumstances that are "exigent" in a case such as this are those which, when viewed objectively, are both inconsistent with lawful behavior and reasonably threaten the imminent destruction of evidence.

■ The question before us is whether the necessary exigent circumstances existed that validate the officers' forcible entry into Clement's hotel room without a warrant. The district court here agreed with the magistrate's conclusion that exigent circumstances were present because the agents "reasonably inferred" that occupants of room 306 were expecting their associates to return with the proceeds of the earlier sale of cocaine and that their nonappearance could be expected to warn Clement that the sale had failed. Thus, "[t]he agents faced a significant risk that any delay in obtaining a warrant would result in alarming defendants Sastre and Clement, precipitating removal or destruction of the cocaine." Magistrate's Review and Recommendation at 13. The cocaine referred to was that amount Stephenson and McDade had not already delivered to the DEA agents. The essential circumstances included the lack of response at the door after knocking, seeing someone approach the door, look through the peephole and retreat, and hearing a scrambling noise. The court also noted that one of the

defendants did in fact temporarily escape during the time it took to break through the door. We would add that the gravity of the offense weighs heavily "as an important factor to be considered in the exigent-circumstances calculus." *Welsh v. Wisconsin,* 466 U.S. 740, 751, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984). Cocaine trafficking is, of course, a serious offense.

The agents as they approached Room 306 had probable cause to arrest its occupants. The absence of a warrant does not preclude a knock on the door, the announcement of their identity, and the demand of entry. Their forcible entry thereafter must rest upon the circumstances set forth above. Clement's argument essentially is that despite these circumstances they fail to meet the exigent standard because the agents could have established surveillance of all exits from the room and preserved the status quo until a warrant was obtained. The district court implicitly rejected this argument. We hold that to do so was not clearly erroneous.

Clement cites several cases in support of his argument that exigent circumstances were not present. In *United States v. Williams,* 604 F.2d 1102, 1122–23 (8th Cir. 1979), we found that the only exigent circumstances were the subject matter of the investigation (narcotics) and the police officers' testimony about the sound of "running feet." We found no showing that any evidence was in "imminent danger of destruction or removal," quoting *Ker v. California,* 374 U.S. 23, 40–41, 83 S.Ct. 1623, 1633–34, 10 L.Ed.2d 726 (1963), or that there was a "compelling need for official action and no time to secure a warrant," quoting *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978). In the instant case, however, the district court endorsed the Magistrate's finding that Clement could reasonably be supposed to "take warning from the delay in [Stephenson and McDade's] return and the scurrying heard by the officers while outside room [306] justified a fear that evidence would be destroyed." *Knobeloch,* 746 F.2d at 1367; *see United States v.*

*Palumbo,* 735 F.2d 1095, 1097 (8th Cir.), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984).

In *United States v. Beck,* 662 F.2d 527, 530 (8th Cir.1981), we had serious doubts that the necessary exigent circumstances existed. There, the police arrested a marijuana dealer in front of the residence of his source for the drug. One of the officers "saw someone watching from an upstairs window." *Id.* at 529. He called out this information to other officers who then proceeded to enter the residence. We regarded the disappearance of a face in the window as an "essentially neutral" circumstance. That is it was consistent with innocent behavior. The case before us, however, is different because the circumstances subsequent to the knocking were not consistent with innocent behavior.

Under the clearly erroneous standard, we must defer to the decision of the lower court "unless it is not supported by substantial evidence, it evolves from an erroneous conception of the applicable law, or we are left with a firm conviction that a mistake has been made after having considered the entire record." *United States v. Wallraff,* 705 F.2d 980, 987 (8th Cir. 1983). We are required to defer to the district court's decision under the facts of this case.

AFFIRMED.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent.

Contrary to the majority's contention, the facts underlying the warrantless search in the present case do not mirror the facts in *United States v. Knobeloch,* 746 F.2d 1366 (8th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985), a case which, it seems to me, tested the exigent circumstances exception to the warrant requirement to its outer limits.[1] In that case, immediately upon his arrest, defendant Knobeloch's confederate told the arresting officers that Knobeloch expected him back immediately with the proceeds of

---

1. I served on the panel that decided *Knobeloch.*

the drug sale. The police officers, realizing that Knobeloch would discover that the deal had gone sour well before they could obtain a warrant, immediately proceeded to Knobeloch's hotel room. After they identified themselves as police officers, they heard a scuffling sound in the room. Fearing that the drugs would be destroyed, they entered the room and found cocaine on Knobeloch's person. This court held that the possibility that Knobeloch would take warning from his confederate's delay in returning, together with the scurrying sounds heard in Knobeloch's hotel room, justified a fear that evidence would be destroyed. The court thus upheld the search despite the law enforcement officials' failure to obtain a warrant.

Here, however, there is nothing in the record to suggest that Clement was awaiting McDade and Stephenson's return and that the evidence was in danger of destruction. The Magistrate simply held that, from the evidence presented at the suppression hearing, "this deduction was reasonably inferred by the agents who made the arrest." However, to dispense with the warrant requirement simply on the mere possibility that evidence will be destroyed renders the Fourth Amendment impotent. This is particularly true in drug cases, where the evidence is capable of quick destruction. *See United States v. Diaz*, 814 F.2d 454, 458–59 (7th Cir.1987).

This case is virtually indistinguishable from *United States v. Williams*, 604 F.2d 1102 (8th Cir.1979), where we refused to dispense with the warrant requirement where the only asserted exigent circumstances were the subject matter of the investigation, *i.e.*, drugs, and the sound of running feet. *Williams* is still good law and controls the facts of this case.

The Fourth Amendment guarantees that absent special circumstances reflecting a compelling need for official action and no time to obtain a warrant, law enforcement officials must obtain a warrant before they search an individual's private dwelling. *Id.* at 1122–23. No such special circumstances exist here. The agents prepared for a nonconsensual search when they brought a sledgehammer to the hotel at 11:30 a.m. on the day before the search. The drug enforcement agents simply chose to dispense with the Fourth Amendment safeguard of a neutral magistrate who determines probable cause. In so doing they leave the individual at the whim of law enforcement authorities.

The Fourth Amendment is central to our Constitution. It is important, not for the criminal but for the individual, as it is the individual's only protection from unwarranted invasions into his or her privacy. The majority's willingness to read the Fourth Amendment out of the Constitution in this case bodes ill for the protection of an individual's privacy against uncontrolled invasion by police. The Fourth Amendment protects us all against that evil. That on occasion the guilty might escape prompt punishment is a price society must pay for the protection of the individual—yes, even rights of innocent individuals.

But here let us note that enforcement of the Fourth Amendment will not necessarily free the guilty. The government has the right to retry Clement and, as the facts set forth in the majority opinion demonstrate, the government has ample evidence, even without the tainted search, with which to retry him and in all likelihood obtain a conviction on retrial.

But instead, the majority here has ignored the constitutional protection of the Fourth Amendment and allowed the exception for exigent circumstances to swallow the constitutional rule. I reject that approach.