# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1315

_____

United States of America,               *
                                      *

       Appellee,            *

                                        *   Appeal from the United States
      v.                      *   District Court for the Western
                                        *   District of Missouri.

Bobby R. Leveringston,       *

                                        *

       Appellant.        *

                                        *

_____

Submitted: September 16, 2004
Filed: February 16, 2005

_____

Before COLLOTON, HEANEY, and HANSEN, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Bobby R. Leveringston entered a conditional plea of guilty to a charge of possession of crack cocaine with intent to distribute. He reserved the right to appeal the district court's denial of his motion to suppress evidence seized from his hotel suite after his arrest. We agree with the district court that the police had sufficient

justification to enter the hotel suite without a warrant, and we therefore affirm the judgment of the district court.[1]

## I.

On November 17, 2002, Officers Jason Quint and Michael Ward of the Kansas City Police Department responded to reports of suspicious drug activity at the Marriott Residence Inn. The manager of the hotel told the officers that he suspected drug activity had been occurring in Leveringston's suite, because people had been coming to the suite throughout the day and staying only two to three minutes before leaving. The manager told the officers that he was unwilling to tolerate drug activity at his motel, and that he planned to evict Leveringston.

The two officers knocked on the door of the suite. Leveringston opened the curtains, saw the officers, looked surprised, and closed the curtains again. The officers knocked again and heard loud noises coming from inside the suite, including what sounded like dishes breaking, pots and pans slamming, and a garbage disposal and water both running. The officers pounded on the door and called out, "Police. Open the door. Is everything okay?," but received no response. As he continued to knock on the door, Quint called for a second patrol car to assist in forcing entry, if necessary. The officers continued knocking for two or three minutes. Quint then announced, "Open the door or we're going to kick in the door." The loud noises stopped (except for the garbage disposal and running water), and Quint heard what he believed to be a window opening from inside the suite. Quint looked around the corner and saw Leveringston jump from the second-story window of the suite.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

Both officers chased Leveringston as he ran through the hotel complex. As they pursued him, Leveringston jumped over a six-foot wrought iron fence surrounding the hotel complex, fell fifteen feet to the ground, and then continued running. A third policeman in a second patrol car arrived on the scene and apprehended Leveringston. After Leveringston was stopped, Officers Quint and Ward returned to their patrol car and drove to where Leveringston was located. A search of Leveringston's person discovered $1,355 in cash and a key card to the hotel suite. Both officers noticed that Leveringston's hand was wounded and that his hand and shirt were covered in blood. Quint called for an ambulance and for a wagon to transport Leveringston to police headquarters. Quint and Ward returned to the hotel after Leveringston was taken from the scene.

Back at the hotel, the officers arranged for the manager to admit them to Leveringston's suite. The officers looked around the living room, bedroom, and bathroom, where they observed blood near a sink, a scale, plastic baggies, a razor blade, and what they believed to be crack cocaine.

Detective Jeanelle Cesena of the Drug Enforcement Unit was then called to the scene, and she obtained a search warrant for the suite approximately two or three hours later. Upon conducting a search pursuant to the warrant, police seized 25.1 grams of cocaine base and 47.31 grams of cocaine from baggies on the floor and from inside the garbage disposal.

Leveringston was charged with possessing with the intent to distribute five grams of more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and possessing with the intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He moved to suppress evidence on the ground that the searches of the hotel suite were conducted in violation of his rights under Fourth Amendment. The district court, adopting a magistrate judge's report and recommendation, denied the motion to suppress. Leveringston then entered a

conditional plea of guilty to the first count of the indictment, reserving his right to appeal the denial of his motion to suppress. He was sentenced to 120 months' imprisonment.

## II.

Leveringston asserts that the evidence of drug trafficking seized from his hotel suite was obtained in violation of the Fourth Amendment's proscription against unreasonable searches and seizures. The Fourth Amendment generally prohibits entry to a home without a warrant, unless the circumstances meet an established exception to the warrant requirement, such as the presence of exigent circumstances. *See Payton v. New York*, 445 U.S. 573, 589-90 (1980). Leveringston observes that "the protections against warrantless intrusions into the home . . . apply with equal force to a properly rented hotel room during the rental period," *United States v. Rambo*, 789 F.2d 1289, 1295 (8th Cir. 1986), and argues that the warrantless entry into the hotel suite by Officers Quint and Ward was unjustified by exigent circumstances. Although the disputed evidence was seized only after police obtained a warrant to search the suite, Leveringston contends that the initial warrantless entry tainted the seizure.

The government counters that the later-obtained warrant provides a sufficient basis for the disputed seizure, even assuming the initial entry was unlawful, so there is no need to decide whether exigent circumstances justified the warrantless entry. The government's position is premised on the "independent source doctrine," which rests upon the policy that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it otherwise would have occupied." *Murray v. United States*, 487 U.S. 533, 542 (1988). In this case, the government contends that although the affidavit in support of the search warrant included information gained during the initial entry, the remaining information in the affidavit established probable cause to search the hotel suite. Thus, says the

-4-

government, the warrant was obtained "independent" of any possible illegality in the initial entry.

We cannot accept the government's position on this point, because it understates the showing required to establish that a search warrant is genuinely independent of an earlier entry. The Supreme Court has explained that a search warrant obtained after an illegal entry is not an independent source of evidence if "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542 (footnote omitted). The government's argument in this case is directed only to the second part of that equation: because the affidavit established probable cause to search the suite based on information not obtained during the initial entry, the information obtained during that entry did not affect the magistrate's decision to issue the warrant. *See United States v. Packer*, 730 F.2d 1151, 1156 (8th Cir. 1984); *United States v. Williams*, 633 F.2d 742, 745 (8th Cir. 1980).

*Murray* makes clear, however, that to employ the independent source doctrine, the government also must establish that the police would have sought a warrant if they had not earlier entered the hotel suite. It is not sufficient, under *Murray*, for a court of appeals to infer from the circumstances that the police inevitably would have sought a warrant; findings of fact by the district court are required. 487 U.S. at 543. Here, the district court found that after the initial warrantless entry, "Sergeant Arroyo called Detective Cesena of the Drug Enforcement Unit who arrived on the scene and, *based on her observations of the suite*, obtained a no-knock search warrant for the suite approximately two or three hours later." (D.R. 3) (emphasis added). While this finding does not preclude the possibility that officers other than Detective Cesena would have sought a warrant even if they had been prevented from entering the suite without a warrant, it is not our function to determine the facts, and the district court

certainly did not "explicitly find that the agents would have sought a warrant if they had not earlier entered the [hotel suite]." *Murray*, 487 U.S. at 543.

When the government seeks to rely on the independent source doctrine in a case involving a later-obtained warrant, it should present specific evidence that the officers were not prompted by allegedly unlawful activity to obtain the warrant, and should seek a finding on that point from the district court. In this case, it turns out, the government never even raised the independent source doctrine in the district court, so it is little wonder that the district court made no pertinent finding.

The government's alternative argument echoes the district court's conclusion that the disputed evidence was admissible because the initial warrantless entry to the hotel suite was justified by exigent circumstances. At the time the officers first knocked and announced their presence at the hotel suite, there is no doubt that the police had both probable cause to investigate and exigent circumstances that would have permitted a warrantless entry. The hotel manager had informed the officers of signs of suspicious drug activity in Leveringston's suite, that is, frequent visitors to the suite who stayed only two or three minutes before leaving. The occupant of the suite reacted to police knocking by looking through curtains, expressing surprise, and then immediately shutting the curtains. This response was followed by sounds of pots and pans slamming, dishes breaking, water flowing, and a garbage disposal running. The officers reasonably could infer that these sounds indicated the destruction of evidence of drug trafficking in response to the presence of the police. Police then observed Leveringston flee from the suite, suggesting at least consciousness of guilt on his part. If the officers had entered the suite at that moment, we believe it is clear that entry without a warrant would have been justified by probable cause that evidence of drug trafficking was within and that destruction of evidence was imminent.

The police officers, however, did not enter immediately in response to this exigency. When Leveringston lept from the window and fled the hotel suite, Officers Quint and Ward participated in the pursuit and apprehension of Leveringston, and they remained with Leveringston until he was transported from the scene. The officers then returned to the hotel, and asked the hotel manager to open Leveringston's suite. Leveringston contends that the delay occasioned by the chase and arrest removed any exigency that might have justified entry at an earlier point in time.

In evaluating whether a warrantless entry was justified by exigent circumstances, we consider the circumstances that confronted the police at the time of the entry. As with most issues arising under the Fourth Amendment, we apply an objective standard to evaluate the reasonableness of an assertion that exigent circumstances justified a warrantless entry. *United States v. Morales*, 737 F.2d 761, 764 (8th Cir. 1984); *United States v. Selberg*, 630 F.2d 1292, 1295-96 (8th Cir. 1980). Our analysis, therefore, is not limited to the subjective beliefs of the police officer who actually made the entry. We examine, rather, what an objectively reasonable officer on the scene could have believed, for if such an officer would have had sufficient grounds to believe there was an exigency, then the Fourth Amendment did not require a warrant, and the suspect's constitutional rights were not violated by a warrantless entry. *See generally United States v. Knights*, 534 U.S. 112, 122 (2001); *United States v. Jones*, 990 F.2d 405, 408 (8th Cir. 1993); *Klingler v. United States*, 409 F.2d 299, 304 (8th Cir. 1969).

In this case, we believe that two separate concerns created a legitimate need for immediate action that "could not brook the delay incident to obtaining a warrant." *Dorman v. United States*, 435 F.2d 385, 392 (D.C. Cir. 1970) (en banc). The first is destruction of evidence. The risk that evidence will be destroyed during the time required to obtain a search warrant can be an exigent circumstance that justifies a warrantless entry. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *Schmerber v.*

-7-

*California*, 384 U.S. 757, 770-71 (1966). With water continuing to run and a garbage disposal continuing to grind inside Leveringston's hotel suite, the police had grounds to believe there was a fair probability that evidence of drug trafficking – a serious felony offense – would be lost if they did not make immediate entry. For one thing, the officers could not be assured that after Leveringston fled, no accomplice (perhaps one of his "frequent visitors") remained behind to continue the destruction of drug trafficking evidence by feeding it through a garbage disposal. And even if the suite were empty, it was likely that Leveringston himself had placed evidence in the garbage disposal prior to fleeing, such that the continuing flow of water threatened to dissolve or wash down the drain a quantity of drugs or other evidence. Indeed, the police ultimately did seize cocaine from the garbage disposal after making the warrantless entry.

We also believe that the discovery of blood on Leveringston's hand and shirt at the time of his arrest, combined with the sounds of dishes breaking and pots slamming immediately before Leveringston's flight, gave the police a sufficient basis to believe that there may be a person in need of immediate aid within the hotel suite. *See Mincey v. Arizona*, 437 U.S. 385, 392 (1978). While it was of course possible that the blood that covered Leveringston was simply his own blood flowing from injuries incurred during his flight from the hotel suite, a reasonably prudent officer – having heard the loud commotion in the suite and witnessed the blood on Leveringston – also could infer a fair probability that another party was injured in the suite after some sort of struggle with Leveringston. The Fourth Amendment does not require certitude before police may act without a warrant to protect persons or evidence; as we understand the Supreme Court, a showing of probable cause is sufficient. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990). In our judgment, the circumstances here were sufficient to lead a police officer of reasonable caution to conclude that prompt investigation into the potential of an injured party in need of assistance was warranted.

Our recent opinion in *United States v. Janis*, 387 F.3d 682 (8th Cir. 2004), is instructive on this point.  In *Janis*, the defendant had shot himself in the leg with a firearm while in his own home, and then left the firearm in the home when he traveled to a hospital.  Police learned of the incident while at the hospital, and then progressed to the home, where they found a puddle of blood in the driveway, and a trail of blood between the driveway and the front door.  Although the police had no specific information the blood was from any person other than Janis, or that any other person was injured, we held that a warrantless entry of the home "could be justified for the officers *to determine whether anyone else was injured* or in danger."  *Id.* at 688 (emphasis added).  Because the officers in *Janis* reasonably could have believed that exigent circumstances were present, the entry was consistent with the Fourth Amendment.  *Id.*  So too here.

Leveringston makes much of the fact that Officers Quint and Ward did not enter the hotel suite until after Leveringston was apprehended, searched, and removed from the scene.  We are not persuaded, however, that the delay between the initial encounter at the door of the hotel suite and the warrantless entry undermines the district court's finding of exigent circumstances.  While the record does not reveal a precise time line of events, it suggests strongly that no more than twenty minutes elapsed between Leveringston's flight from the suite and the warrantless entry.[2]  This is far less than the two hours that eventually were required to obtain a warrant, and for the reasons discussed, we do not believe the delay eliminated the reasonableness of a concern that evidence would be destroyed if the officers did not enter promptly.

---

[2]Officers Quint and Ward first arrived at the hotel at 2:52 p.m.  (Hrg. Tr. 3). They spoke with the acting manager, and then knocked on the door to Leveringston's suite for at least two minutes before leaving to chase the fleeing suspect.  (*Id*. at 4-7). The officers then returned to the suite, and entered with the assistance of the manager. After their entry, the officers telephoned Detective Cesena, who testified that she traveled to the scene and arrived between 3:20 and 3:30 p.m.  (*Id*. at 47).

*See generally United States v. McEachin*, 670 F.2d 1139, 1145 (D.C. Cir. 1981) (delay before search did not eliminate exigent circumstances).

The delay is largely irrelevant to the concern that there may have been a person within the suite in need of immediate aid. While the officers heard loud noises in the suite before the suspect fled, the officers did not observe the blood on Leveringston's hands and shirt until he was apprehended, and it was that observation that gave rise to the heightened concern of a second exigency. Thus, that the officers failed to enter the suite prior to chasing and apprehending Leveringston does not refute the conclusion that a reasonable officer could have believed *after* the suspect's apprehension that the totality of circumstances justified an entry to investigate whether any other person was injured and in need of assistance. *See United States v. Gill*, 354 F.3d 963, 967 (8th Cir. 2004).

The judgment of the district court is affirmed.

_____