# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2724

_____

United States of America,          *
                                 *

         Appellant,        *

                                 *   Appeal from the United States

     v.                         *   District Court for the District

                                 *   of South Dakota.

Vernon R. Schmidt, Jr.,        *

                                 *

         Appellee.        *

_____

Submitted: December 14, 2004
Filed: April 13, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The United States appeals the district court's order granting Vernon Schmidt, Jr.'s motion to suppress all the evidence obtained after an officer of the Rosebud Sioux Tribal Police entered his home without a warrant. The government contends that the district court erred both because exigent circumstances justified the entry and because Mr. Schmidt committed a new and distinct crime after the entry. We reverse and remand the case to the district court for further proceedings.

In the early morning hours, Rosebud Sioux Tribal Police Officer Andrew Martinez observed four cars that he believed were exceeding the speed limit. He followed the vehicles and saw two of them pass the others and speed off. Officer Martinez followed the remaining two cars until they pulled into the driveway of the house that Mr. Schmidt shares with his grandmother on the Rosebud Sioux Reservation. Officer Martinez parked his patrol car behind the vehicles and approached three teenage boys, including Mr. Schmidt, who were standing in the front yard of the house; two other teenage boys remained in one of the vehicles. As Officer Martinez approached Mr. Schmidt, he made observations that led him to believe that Mr. Schmidt, who was eighteen years old, had been consuming alcohol. The exact nature of the exchange that ensued between Officer Martinez and Mr. Schmidt is in dispute, but it is clear that Mr. Schmidt insisted that Officer Martinez had no right to be on his property.

Officer Martinez attempted to arrest Mr. Schmidt for underage drinking. As Officer Martinez reached for his handcuffs, Mr. Schmidt kicked him in his left knee. Mr. Schmidt then escaped and Officer Martinez tackled him but was unable to secure him before he escaped again, running into his residence and closing the door. At that point, Officer Martinez turned his attention to the other teenagers in the driveway and arrested them for curfew violations. The arrest and detention of these individuals took between five and ten minutes.

While Officer Martinez was effecting these arrests, Mr. Schmidt emerged from his house and began yelling at Officer Martinez from the doorstep. Mr. Schmidt again insisted that Officer Martinez had no right to be on his property or to arrest him there. This prompted Officer Martinez to approach the defendant. As he approached, Mr. Schmidt once again retreated into his house and locked the door. Officer Martinez then knocked on the door, announced his presence, and, when there was no

response, kicked in the door and entered. At no point did Officer Martinez try to secure a warrant.

Once inside the house, Officer Martinez tried to gain control of Mr. Schmidt in the hallway, but he escaped to the bedroom and began jumping on the bed while yelling for his grandmother and throwing pillows and other objects at Officer Martinez, causing him to lose his flashlight briefly. Mr. Schmidt then ran from the bedroom and into the bathroom, closing the door behind him. After struggling to open the bathroom door, Officer Martinez grabbed Mr. Schmidt by the belt as he was attempting to escape out a window; but Mr. Schmidt wriggled free as Officer Martinez was escorting him to the living room. Officer Martinez again gave chase, and again he caught Mr. Schmidt, this time just a few feet outside the front door of the residence. As they wrestled, Mr. Schmidt leaned his weight against Officer Martinez's injured knee and Officer Martinez lost control of Mr. Schmidt, who then ran away. The defendant was not arrested until weeks after the incident.

Following the arrest, a grand jury returned a three-count indictment against Mr. Schmidt for assaulting, resisting, or impeding a federal officer with a dangerous weapon (shod feet), *see* 18 U.S.C. § 111; assaulting, resisting, or impeding a federal officer resulting in bodily injury, *see id.*; and assault with a dangerous weapon (shod feet), *see* 18 U.S.C. §§ 113(a)(3), 1153.

Mr. Schmidt moved to exclude any testimony as to events that occurred after Officer Martinez entered his house. The district court held that although Officer Martinez had a right to approach Mr. Schmidt in his driveway, and, after the initial scuffle in the driveway, had probable cause to believe that the defendant had committed at least one felony offense, Officer Martinez's warrantless entry into Mr. Schmidt's house violated the fourth amendment because it was not supported by exigent circumstances. The court concluded that the officer's entry was motivated by anger rather than exigency and that the officer abandoned his hot pursuit when he

turned his attention to arresting the others in the driveway. The district court also held that the charges against Mr. Schmidt dealt only with what took place in the driveway before the entry into the home. For this reason, it refused to admit evidence of the events inside the home under the so-called "new and distinct crime" theory.

## II.

The government first contends that the district court erred in holding that Officer Martinez's warrantless entry into Mr. Schmidt's home was not justified by exigent circumstances. (Although the fourth amendment does not apply to the conduct of Indian tribal officials in Indian territory, the same standards are applicable to their actions under the Indian Civil Rights Act of 1968, *see* 25 U.S.C. § 1302(2); *United States v. Clifford*, 664 F.2d 1090, 1091-92 n.3 (8th Cir. 1981).) When reviewing a district court's conclusion regarding the presence of exigent circumstances, we " 'review findings of historical fact only for clear error' and 'give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.' " *United States v. Ball*, 90 F.3d 260, 262 (8th Cir. 1996) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). We review *de novo* the ultimate conclusion that the historical facts amounted to exigent circumstances. *Ball*, 90 F.3d at 262.

An exception to the warrant requirement permits an officer to enter a home if he or she acts with probable cause in the presence of exigent circumstances. *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 967 (2005). Mr. Schmidt does not dispute the district court's finding that Officer Martinez had probable cause to believe that he had committed a felony offense. In evaluating whether exigent circumstances justify a warrantless entry, we concern ourselves with "what an objectively reasonable officer on the scene could have believed." *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005). "[I]f such an officer would have had sufficient grounds to believe there was an exigency, then the Fourth Amendment d[oes] not require a warrant." *Id.*

The Supreme Court reaffirmed the proposition that the hot pursuit of a fleeing suspect can be an exigent circumstance justifying a warrantless arrest in one's home in *Minnesota v. Olson*, 495 U.S. 91, 100-01 (1990). *See also United States v. Santana*, 427 U.S. 38, 42-43 (1976). Nevertheless, not all police pursuits will do so. In *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984), the Supreme Court instructed courts to weigh the "gravity of the underlying offense" in determining the legality of the entry. The underlying offense here, assault with a dangerous weapon, is certainly a serious offense. The Court cautioned, however, that probable cause to believe that a serious crime has been committed does not, in and of itself, create an exigency. *See id.* The Court in *Welsh* also required that the government demonstrate an "immediate or continuous pursuit [of the suspect] from the scene of [the] crime," *id.*, in order to fall within the hot-pursuit exception. As we noted previously, the district court held that Officer Martinez abandoned his pursuit of Mr. Schmidt when he took five to ten minutes to arrest the others in the driveway.

Against this legal background, we consider whether hot pursuit justified Officer Martinez's entry into Mr. Schmidt's house in the relevant circumstances. Though the question is close, we think that the answer is yes. Our conclusion is primarily driven by a comparison of the present circumstances with those in *Santana*, 427 U.S. at 39-41. In *Santana*, the police set up a drug buy with marked money to investigate drug dealers who were dealing out of the defendant's house. An undercover officer drove to the defendant's residence with a target of the sting, who went into the house and purchased heroin with marked bills. As they drove away from the house, the officer obtained the drugs from the buyer; he then stopped the car, displayed his badge, arrested the buyer, and asked her who had the money. After the undercover officer notified other officers that the marked money was in the defendant's possession, they drove approximately two blocks back to the defendant's residence and spotted her standing in the doorway. Upon seeing the officers approach, she retreated into her house. The officers, acting without a warrant,

followed her into the house and arrested her.  At trial, the defendant moved to suppress the drugs and money found in her house.  *Id.*

The Court in *Santana* stated that when the police sought to arrest the defendant, she was, much like Mr. Schmidt when he came onto his doorstep to taunt Officer Martinez, "not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house."  *Id.* at 42.  Thus, the Court concluded that when the police sought to arrest the defendant, she was not in an area where she had an expectation of privacy, *id.* (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)), and the police were simply attempting to effect a warrantless arrest of her in a public place upon probable cause pursuant to *United States v. Watson*, 423 U.S. 411 (1976).  Accordingly, the Court framed "[t]he only remaining question" as "whether [the defendant's] act of retreating into her house could thwart an otherwise proper arrest."  *Santana*, 427 U.S. at 42.  The Court reasoned that once the defendant saw the police, there was a realistic expectation that delay would result in the destruction of evidence and concluded that "a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place."  *Id.* at 43.

Here Mr. Schmidt persuaded the district court that Officer Martinez abandoned his hot pursuit when he turned his attention to arresting the others in the driveway.  But we conclude that Officer Martinez's decision to arrest the others rather than enter the home immediately is no more fatal to the justification of hot pursuit than the decision by the officers in *Santana* to drive two blocks away from the residence, complete the drug transaction, arrest the target, briefly confer, and then drive two blocks back to the defendant's residence before arresting her.  The Supreme Court upheld the entry in *Santana* because when the police returned, they found the defendant standing in a "public" place.  *Id.* at 42.  In the instant case, the facts are even more stark:  Mr. Schmidt voluntarily came back outside his home and began yelling at Officer Martinez, only to retreat when Officer Martinez approached.

Apparently, Mr. Schmidt thought that the enforcement of the criminal laws resembles a children's game of tag where one is 'safe' if one reaches 'home' before being tagged by an officer. *Cf. Gasset v. State*, 490 So. 2d 97, 98-99 (Fla. Dist. Ct. App. 1986). But *Santana* instructs that our criminal laws do not play such games.

This would be a more difficult case if Mr. Schmidt had not reemerged from his home. We would then have had to confront directly the question of whether the five to ten minutes that passed while Officer Martinez arrested the other teenage boys in the driveway cooled his initial hot pursuit. *But cf. Leveringston*, 397 F.3d at 1117-18. In the instant case, however, as in *Santana*, the defendant emerged into a "public" place at a scene where the police had probable cause to believe that he had committed a crime only minutes earlier. Once Mr. Schmidt reappeared at the scene of the crime, Officer Martinez gave chase immediately and the chase continued uninterrupted. We therefore reject Mr. Schmidt's argument that the time that Officer Martinez took to arrest the others in the driveway distinguishes his case from *Santana.*

Mr. Schmidt also attempts to distinguish his case from *Santana* by arguing that the fact that a delay would likely have resulted in the destruction of evidence figured in the *Santana* decision. We recognize that this assertion is not without support. For example, in *Duncan v. Storie*, 869 F.2d 1100, 1102-03 n.5 (8th Cir. 1989), *cert. denied*, 493 U.S. 852 (1989), we indicated that it was the existence of the additional exigent circumstance in *Santana* that transformed the pursuit into a truly exigent circumstance, or as the court put it, "a true 'hot pursuit,' " *Santana*, 427 U.S. at 42, *as quoted in Duncan*, 869 F.2d 1102-03 n.5, thereby justifying the officer's entry into the house. In *Olson*, 495 U.S. at 100, however, the Supreme Court implicitly rejected this view and endorsed the idea that hot pursuit can justify a warrantless entry even in the absence of another concern that requires swift police action. There the Court considered the standard applied by the Minnesota Supreme Court to determine whether entry was lawful: The state court had observed that a warrantless intrusion may be justified by hot pursuit, the imminent destruction of evidence, the need to

prevent escape, or the risk of danger to the police or others and "thought that in the absence of hot pursuit there must be at least probable cause to believe that one or more of the other factors justifying the entry were present." *Id.* The United States Supreme Court approved this logic, calling it both "essentially the correct standard" and "the proper legal standard." *Id.* This endorsement leads us to conclude that hot pursuit can, without more, justify a warrantless entry.

Even if this is not correct, we recently held that the threat to public safety created by the possibility of juveniles driving away from a house while under the influence of alcohol created an exigency justifying a warrantless entry into the house. *See Radloff*, 380 F.3d at 348. The facts of this case present a similar risk. Officer Martinez testified that he smelled a strong odor of alcohol on Mr. Schmidt and that Mr. Schmidt's speech was slurred. Mr. Schmidt disputes the government's assertion that he was intoxicated that night. We think, however, that under *Radloff,* an objectively reasonable officer, believing, as the district court found that Officer Martinez did, that Mr. Schmidt had been consuming alcohol, could have reasonably believed that the same threat presented itself here. Accordingly, we reject Mr. Schmidt's attempt to distinguish his case on this ground.

### III.

We also note that the district court's reading of the indictment does not comport with ours. The district court concluded that "[n]one of the present pending charges in federal court deal with alleged criminal activities after the officer broke down the door of the residence." As a result of this reading of the indictment, the district court refused to rule that the evidence was admissible because Mr. Schmidt's acts inside the home constituted a new and distinct crime. We find no reason not to read Count II of the indictment, alleging that Mr. Schmidt did "forcibly assault, resist, oppose, impede, intimidate and interfere with Andrew Martinez, resulting in the infliction of bodily injury to Andrew Martinez, a law enforcement officer ... while said officer was engaged in the performance of his official duties, in violation of 18 U.S.C. § 111," as

encompassing the events inside the house. (Mr. Schmidt's actions inside the house, including throwing objects at Officer Martinez and resisting Officer Martinez in a manner that further injured his knee, could fall within the prohibitions of 18 U.S.C. § 111, which are specifically alleged in Count II.)

Our conclusion that Mr. Schmidt's actions inside the house could constitute a new and distinct crime does not depend on our earlier conclusion that Officer Martinez's entry was lawful. In our circuit, resistance to an illegal arrest can furnish grounds for a second, legitimate arrest. *See United States v. Dawdy*, 46 F.3d 1427, 1430-31 (8th Cir. 1995), *cert. denied*, 516 U.S. 872 (1995). Therefore, even if Officer Martinez's first attempt to arrest Mr. Schmidt inside the house was invalid, Mr. Schmidt's resistance provided an independent ground for his arrest, *see* Law and Order Code of the Rosebud Sioux Tribe, § 5-5-1, that thereafter furnished an independent justification for Officer Martinez's presence in the house. *See United States v. Collins*, 200 F.3d 1196, 1198 (8th Cir. 2000); *Dawdy*, 46 F.3d at 1430-31; *see also United States v. Hunt*, 372 F.3d 1010, 1012 (8th Cir. 2004); *United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir. 1984), *cert. denied*, 472 U.S. 1017 (1985). Accordingly, the fourth amendment does not bar evidence obtained after Mr. Schmidt committed a new crime. "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982), *cert. denied*, 461 U.S. 933 (1983). Whether Mr. Schmidt was indicted for this new crime does not matter to the fourth amendment question, so long as he could have been arrested for it as an objective matter. It may, of course, bear on relevance or some other consideration of the rules of evidence, but it does not affect the constitutionality of Officer Martinez's presence.

IV.

Accordingly, we reverse the order of the district court suppressing the evidence obtained after Officer Martinez's entry into Mr. Schmidt's home and remand for proceedings consistent with this opinion.

_____