**F I L E D**

**UNITED STATES COURT OF APPEALS**

**July 6, 2005**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 04-5038 |
| v. | (D.C. No. CR-02-174-P) |
| CASEY DUANTE JACKSON, | (N. D. Okla.) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

Defendant was indicted for armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count One), and for using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two). Defendant filed a

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

motion with the district court seeking to quash his arrest and suppress evidence allegedly obtained in violation of his Fourth Amendment rights. The district court denied the motion. After a jury trial, Defendant was convicted on both counts. The district court then sentenced Defendant to 87 months' imprisonment for Count One and 84 months' imprisonment for Count Two, to be served consecutively, followed by concurrent terms of supervised release for five years.

On August 26, 2002, Sergeant Randy Brock of the Owasso Police Department received dispatched information that the Exchange Bank of Owasso had been robbed. According to the dispatch, the suspect was a black male wearing black baggy windpants and a hooded sweatshirt, and he was last seen leaving the bank on foot traveling westbound on 86th Street. Believing the suspect could have hidden a vehicle just past the railroad tracks on 86th Street, Sgt. Brock proceeded west on 86th Street in search of the suspect. While pursuing this route, Sgt. Brock crossed railroad tracks, which were adjacent to the bank, and left the city limits of Owasso.

Approximately one minute after hearing the suspect's description, Sgt. Brock received another dispatch alerting him that the suspect was armed and that a civilian in a red pickup truck was following the suspect. Sgt. Brock recalled

seeing a red pickup truck[2] when he crossed the railroad tracks earlier, and he continued west to find the truck. Sgt. Brock caught up with the red pickup truck, and the driver informed him that the robbery suspect was driving a purple car with a large "M" on its door and that the car was only a minute or so ahead of them. At this point, Sgt. Brock activated his overhead lights and siren and began searching for the dark colored car. Assuming the suspect would be traveling on the highway, Sgt. Brock turned south onto Highway 11 where he observed a purple Chevrolet Cavalier approximately one-fourth to one-half mile ahead of him. Sgt. Brock pulled the Cavalier over and ordered the suspect out of the vehicle.[3] After additional officers arrived, the officers removed the suspect from the vehicle and arrested him. A total of nine minutes elapsed between Sgt. Brock's receiving the initial dispatch to his stopping the suspect's vehicle.

The first question presented to this court is whether Defendant's constitutional rights under the Fourth Amendment were violated when Sgt. Brock arrested Defendant outside of his jurisdiction. This is a mixed question of law and fact. "On appeal from the denial of a motion to suppress evidence, we review the district court's factual findings for clear error, viewing the evidence in the

---

[2]The driver of the red pickup truck was inside the bank during the robbery. When the robber fled the bank, the civilian immediately followed him, ultimately pursuing him in his red pickup truck.

[3]When he approached the vehicle, Sgt. Brock noticed a large "M" on its side.

-3-

light most favorable to the government." *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005) (citation omitted). The ultimate determination of the officer's reasonableness, however, is a question of law and, as such, is reviewed *de novo. See United States v. Walker*, 941 F.2d 1086, 1090 (10th Cir. 1991).

Generally, a police officer's authority does not extend beyond his jurisdiction. *Ross v. Neff*, 905 F.2d 1349, 1354 (10th Cir. 1990). "A warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause."[4] *Id.* (citations omitted). For either to be permitted, exigent circumstances must be present. *Id.* One predetermined category of exigency is when an officer is found to be in hot pursuit of a suspect. *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) (citing *United States v. Santana*, 427 U.S. 38, 42-43 (1976)). "Hot pursuit means some sort of a chase, but it need not be an extended hue and cry in and about (the) public streets." *Santana*, 427 U.S. at 42-43 (internal quotation marks omitted). Hot pursuit occurs when an officer is in "immediate or continuous pursuit" of a suspect from the scene of a crime. *Welsh*, 466 U.S. at 753; *see also United States v. Schmidt*, 403 F.3d 1009, 1013 (8th Cir. 2005) (explaining that the government must demonstrate an "immediate or continuous pursuit" of the suspect from the scene of the crime in order for the warrantless arrest to fall within the hot pursuit

---

[4]The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue except upon probable cause." U.S. Const. amend. IV.

exception to the warrant requirement).

Against this legal background, we consider whether Sgt. Brock was in hot pursuit justifying the arrest of Defendant outside of his jurisdiction. According to the factual findings in the district court's order, which are not disputed by Defendant, Sgt. Brock immediately responded to the dispatch regarding the fleeing felon. Based on his experience, Sgt. Brock surmised that a suspect would not flee on foot, and he decided to continue in the direction the suspect was heading to search for a getaway car. We need not decide whether this type of an unparticularized hunch would justify an arrest made outside of one's jurisdiction because in this case Sgt. Brock joined in another's pursuit. While Sgt. Brock was crossing the railroad tracks searching for a getaway car, the civilian in the red pickup truck was in hot pursuit of the suspect. This civilian was present during the bank robbery and immediately followed the suspect from the bank and continued to follow him. The civilian's pursuit of the suspect clearly began within Sgt. Brock's jurisdiction. Sgt. Brock joined in this hot pursuit when he contacted the civilian and obtained additional information from him.

After meeting with the civilian in the red pickup truck, Sgt. Brock took reasonable steps to apprehend the suspect based on the information given to him. Sgt. Brock's continuous actions after joining the civilian's pursuit were an extended effort to apprehend the suspect. Thus, Sgt. Brock's pursuit was

immediate and continuous. We are reluctant to second-guess the investigative decisions made by Sgt. Brock in this situation. *See United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).

Additionally, in deciding whether circumstances rise to the level of exigency, it is important to consider "the gravity of the underlying offense for which the underlying arrest is being made." *Welsh*, 466 U.S. at 753. The underlying offense here, armed bank robbery, is certainly a serious offense.

We agree with the district court that "the exigencies of the situation[,] including the fact that the suspect was armed, made the course taken by Sgt. Brock imperative." Aplt. Br., Exh. B, at 9 (Dist. Ct. Order). Accordingly, we find that Sgt. Brock's arrest of Defendant did not violate the Fourth Amendment.

In his second issue on appeal, Defendant challenges his sentence as being imposed in violation of his constitutional rights, as articulated in *United States v. Booker*, 125 S. Ct. 738 (2005). Because he did not raise this issue to the district court, we review for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). Under that standard, we will only reverse Defendant's sentence if Defendant can prove that the sentence imposed was (1) error, (2) which is plain, (3) which affects his substantial rights, (4) sufficient to warrant an exercise of our discretion to correct the error so long as it does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

We have recognized two types of *Booker* errors–constitutional and non-constitutional. *See United States v. Lawrence*, 405 F.3d 888, 906 (10th Cir. 2005). In this appeal, Defendant's only claim is that the district court committed constitutional error in sentencing him. Because Defendant claims constitutional *Booker* error, we apply the plain-error review less rigorously. *See United States v. Brown*, 316 F.3d 1151, 1155 (10th Cir. 2003). We agree with the parties that the district court committed both clear and plain error by finding quantity facts. However, in order to obtain the desired relief, Defendant must also establish the third prong of the plain error test by demonstrating that his sentence was "prejudicial. It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Defendant's sole argument regarding prejudice is that the constitutional error is structural in nature and therefore prejudice should be presumed. We recently rejected that argument. In *United States v. Dowlin*, we held "that constitutional *Booker* error is not structural error because any prejudice stemming from such error can be evaluated on the record developed in the prior proceedings." 408 F.3d 647, 668-69 (10th Cir. 2005). Defendant has failed to meet his burden as to the prejudice prong and, therefore, cannot demonstrate "plain error." *See id.* at 671 (explaining that a party's failure to meet one prong of the test is a sufficient reason not to notice plain error).

**AFFIRMED.**

Entered for the Court


Monroe G. McKay
Circuit Judge