RILEY, Chief Judge,
dissenting.
I respectfully dissent because a reasonable police officer would believe exigent circumstances justified entering the hotel room to prevent the destruction of evidence.
The exigent circumstances exception allows police officers to enter a residence without a warrant in limited circumstances, including to prevent the destruction or removal of evidence, so long as the police have probable cause to search. See United States v. Cisneros-Gutierrez, 598 F.3d 997, 1004 (8th Cir.2010). “To evaluate ‘whether a warrantless entry was justified by exigent circumstances, we consider the circumstances that confronted police at the time of the entry.’ ” Id. (quoting United States v. Leveringston, 397 F.3d 1112, 1116 (8th Cir.2005)). “We look objectively at whether a reasonable, experienced police officer would believe evidence was in danger of removal or destruction.” Id. While such a danger of removal or destruction must be likely to occur in order to justify the entry, the police “need not ... wait until the evidence is in the process of being destroyed before entering.” United States v. Clement, 854 F.2d 1116, 1119 (8th Cir.1988).
Objectively viewing the totality of the circumstances in this case, a reasonable, experienced police officer would believe the defendants were likely to destroy the heroin when Cruz attempted to shut the hotel room door after the officers knocked and identified themselves. Consider what the officers knew at that moment: (1) two men were arrested that morning at the bus station with two kilograms of heroin hidden in their shoes; (2) one arrestee disclosed that a fellow passenger (later identified as Ramirez) also had heroin in his shoes, and that arrestee gave the police a description of the other passenger; (3) three men, including Ramirez, having purchased one-way, cross-country bus tickets, *766 abandoned their California to New Jersey bus trip and left the bus station at approximately the same time as the arrest; (4) at least one of the three men, Cruz, also abandoned his suitcase on the bus; (5) the three men took a cab to a Best Western hotel, another cab to a Comfort Inn, walked to a McDonald’s restaurant, and finally took a different cab to an Econo Lodge, where they checked in approximately thirty minutes before the police arrived; and (6) in a surveillance video at the Comfort Inn, two of the men appeared to still have the heroin in their shoes because they walked heavy-footed or abnormally from the Comfort Inn to the McDonald’s restaurant.
In light of this evidence, the officers’ belief that the men might try to destroy or hide the heroin or other evidence upon reaching the privacy of a hotel room was objectively justified. Faced with this belief, the officers had to choose between waiting two to four hours for a search warrant or trying to establish contact with the three men through some other means.[8] It is unnecessary to decide whether this evidence was enough to justify a warrant-less keycard entry, as the government argues, because the police officers did not succeed in their attempted entry with the keycard. Instead, the officers thereafter tried to establish contact with the defendants by knocking on the door and announcing their presence when Cruz opened the door, which the officers certainly could do with or without exigent circumstances. Cruz’s response of opening the hotel room door, seeing the police and then pushing the door shut (1) objectively supported the officers’ reasonable belief the defendants’ next step would be to destroy or dispose of the heroin, and (2) made immediate action necessary to prevent the destruction of evidence.
The panel majority determines there were no exigent circumstances, see ante at 764-65, arriving at this conclusion by minimizing the significance of the defendants’ conduct before checking into their room. For example, the panel majority dismisses as a mere assumption Investigator Alan Eberle’s belief the three men left the bus station because they observed the arrests of their co-conspirators, concluding “there is insufficient objective evidence to support his presumption.” Id. at 760 & n. 1. I disagree. Why would three men traveling from California to New Jersey with paid bus tickets—one reportedly carrying heroin is his oversized shoes—abruptly abandon before dawn their chosen cross-country mode of transportation, and also some of their luggage at the Omaha bus station, and use three cabs to visit three hotels located in different areas of the city? Considering the co-conspirators’ arrests occurred at the bus station, close in time to when the defendants disappeared, it was reasonable, and not speculative, for the police officers to deduce the three men observed their co-conspirators’ encounter with police and decided to flee the scene.
I also disagree with the panel majority’s assertion “[t]here is no evidence supporting the inference that these men knew the police were tracking them at all.” Id. at 768. Even if one ignores the logical conclusion the men fled the station to avoid the fate of their confederates, the defen *767 dants obviously knew the police officers successfully tracked them by the time Cruz opened the hotel door. Even before this point, the defendants’ clandestine efforts indicate they were trying to evade law enforcement. Three hotel visits by three different cabs before dawn is suspicious behavior for even the most discerning traveler. This conduct supports at least a reasonable suspicion the defendants feared the police would try to find them.
Having removed these circumstances from consideration, the panel majority reasons Cruz’s act of closing the door—described by Investigator Stephen Rasgorshek as an “attempt[] to slam the door shut”—“does not support the exigency here,” id. at 762. While the panel majority is correct, “Cruz was under no obligation to allow the officers to enter the premises ... and was ... within his bounds in his attempt to close the door,” id., the propriety of Cruz’s act is not dis-positive of the issue at hand.
Cruz’s act of shutting the door did not occur in isolation, but was the culmination of a more than a two-hour “goose chase,” id. at 758, during which the police obtained information leading them to believe there was a risk the defendants would rid themselves of the heroin. Viewed in context, Cruz’s act of closing the door on the police transformed this risk into a near certainty. By itself, closing a door on police officers would not provide a reasonable belief exigent circumstances exist. But it is entirely proper for the officers to consider the door closing within the totality of the circumstances. See, e.g., United States v. de Soto, 885 F.2d 354, 368 (7th Cir.1989) (finding exigent circumstances and holding the threat of destruction of evidence justified a warrantless entry of an apartment when the occupant responded to a police officer knock and identification by “attempt[ing] to slam the door in [the police officer’s] face”); cf. Illinois v. Gates, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (“In making a determination of probable cause the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of noncriminal acts.”). When added to the existing suspicious circumstances, Cruz’s closing the door additionally justifies the officers’ entry.
Because exigent circumstances existed when Cruz shut the hotel door, the question becomes whether the police officers impermissibly created these exigent circumstances, in which case they cannot justify the warrantless search. See United States v. Duchi, 906 F.2d 1278, 1284 (8th Cir.1990). The Supreme Court has instructed “the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable” within the meaning of the Fourth Amendment. Kentucky v. King, 563 U.S.-,-, 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011). “Where ... the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.” Id.
Here the police officers did not violate, nor threaten to violate, the Fourth Amendment before knocking on the door. The police officers’ attempt to enter the room with a keycard obtained from the desk clerk was, at worst, an attempted Fourth Amendment violation. The officers’ failed entry attempt is immaterial because it did not create the exigency. The record indicates the officers did not hear any movement inside the hotel room after the officers’ failed keycard entry attempt. And the fact Cruz answered the door shows the *768 botched keycard entry had no effect on events inside the room.
In light of King, the police officers’ subjective intent has no bearing upon our decision. See id. at-, 131 S.Ct. at 1859 (rejecting a test that asked whether police officers created exigent circumstances in a bad faith attempt to avoid having to get a warrant because the subjective nature of such a test is inconsistent with typical Fourth Amendment jurisprudence). Because the officers did not create the exigency by committing or threatening to commit a Fourth Amendment violation, the exigent-circumstances exception should apply in this case.
A highly experienced magistrate judge and district judge, as well as this circuit judge, did not perceive a constitutional violation here. I wonder how police officers on the firing line can distinguish the fine legal lines we draw here today. I would affirm the district court’s denial of Ramirez’s motion to suppress the heroin found in the hotel room.

. The officers were in no position to obtain a search warrant until the officers located where the defendants were staying. See United States v. Curry, 911 F.2d 72, 76-77 (8th Cir.1990) (" 'A search warrant must contain a description of the place to be searched’ in order to comply with the fourth amendment’s particularity requirement.” (quoting United States v. Alberts, 721 F.2d 636, 639 (8th Cir.1983))). The two to four hours necessary to obtain a search warrant for the defendants’ hotel room could not begin to run until the defendants were discovered and identified at the Econo Lodge.