# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3251
_____

United States of America

*Plaintiff - Appellee*

v.

Joseph Frank Meidel

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: June 9, 2014
Filed: August 21, 2014

_____

Before BYE, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Joseph Frank Meidel pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to

_____

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Matt J. Whitworth, United States Magistrate Judge for the Western District of Missouri.

27 months' imprisonment. On appeal, Meidel challenges the district court's denial of his motion to suppress evidence of the firearm found on his person at the time of arrest. Because exigent circumstances permitted law enforcement's entrance onto Meidel's property, we affirm.

## I. Background

In early July 2012, Missouri State Highway Patrol (MSHP) Sergeant Jason Clark received several complaints from Meidel's neighbors that he had been firing guns in the direction of nearby houses. Sergeant Clark conducted a background check, which revealed Meidel was a convicted felon. During his investigation, Sergeant Clark also learned Meidel's girlfriend had purchased a gun at a nearby convenience store and Meidel had bought 9mm ammunition on two separate occasions; the convenience store manager identified Meidel from a photo lineup. Another convenience store employee described an incident where Meidel, after confronting the employee, lifted up his shirt to display the handle of a pistol.

On July 30, 2012, Sergeant Clark and MSHP Sergeant Eric Eidson were in Meidel's neighborhood looking into a suspicious vehicle observed in the area. While canvassing the neighborhood, the sergeants approached Meidel to ask if he had seen the vehicle. He and his girlfriend were in their front yard, which was surrounded by a chain link fence. Sergeant Clark testified he advanced cautiously given his ongoing investigation and reports that Meidel often carried a gun. The two sergeants identified themselves as law enforcement officers. At the time of the conversation, Meidel was standing approximately 3–5 feet from the fence, near a large dumpster. The sergeants were standing near the roadway, on the public side of the fence. Meidel was polite and forthcoming during the conversation, explaining he had in fact seen the vehicle in the neighborhood.

After the conversation ended, Meidel turned around and walked toward the house. The two officers saw what appeared to be a semi-automatic handgun tucked partially into Meidel's pants in the small of his back. Sergeant Eidson asked Meidel if he had a gun; he responded it was a pellet gun. Sergeant Eidson testified that as soon as he asked about the gun, Meidel's demeanor changed. Meidel also continued moving toward the house, which would have placed him behind the dumpster. As Sergeant Eidson explained, Meidel "could have used that dumpster for excellent cover," while the sergeants "were out in the middle of nowhere." Sergeant Clark asked if he was Joseph Meidel; Meidel confirmed he was. Sergeant Eidson then informed Meidel that he was under arrest.

According to the sergeants, Meidel continued walking away. He then reached around his back toward his firearm. In response, the sergeants unholstered their weapons and ordered Meidel to the ground. Meidel did not comply, and Sergeant Eidson jumped the fence. Sergeant Clark followed, brought Meidel to his knees, and handcuffed him. Sergeant Eidson recovered a semi-automatic handgun from Meidel's waistband. Based on the gun and Sergeant Clark's prior investigation, Sergeant Clark obtained a search warrant for Meidel's home. Inside, law enforcement found 9mm bullets and a magazine containing additional ammunition.

On August 29, 2012, Meidel was indicted on one count of being a felon in possession of a firearm. Meidel moved to suppress the evidence, including the gun and ammunition, obtained from his person and his residence. He argued the evidence was the fruit of an unconstitutional search and seizure. The district court denied the motion. Meidel pled guilty to the offense and the court sentenced him to 27 months' imprisonment, the lower end of his advisory guideline range. As part of his plea, however, Meidel reserved the right to challenge the denial of his motion to suppress.

## II. Discussion

On appeal, Meidel argues the sergeants violated his Fourth Amendment right to be free from unreasonable searches and seizures when they entered his front yard after observing him carrying a firearm. "In reviewing a denial of a motion to suppress, we review the district court's factual determinations for clear error and its legal conclusions de novo." United States v. Quintero-Felix, 714 F.3d 563, 567 (8th Cir. 2013). "We will affirm the district court unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." Id. (quotation omitted).

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (quotation omitted). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." Id. at 590. The Supreme Court has further clarified that such Fourth Amendment protection "would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity." Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013). "We therefore regard the area immediately surrounding and associated with the home—what our cases call the curtilage—as part of the home itself for Fourth Amendment purposes." Id. (quotation omitted); see also United States v. Dunn, 480 U.S. 294, 301 (1987) (detailing four factors to consider when determining whether an area is curtilage).

We assume, without deciding, that Meidel's fenced-in front yard constituted curtilage subject to Fourth Amendment protection. Regardless of such constitutional protection, however, "[a]n exception to the warrant requirement permits an officer to enter a home if he or she acts with probable cause in the presence of exigent circumstances." United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005). This

is an objective inquiry, which asks "what an objectively reasonable officer on the scene could have believed." Id. No one disputes that the MSHP sergeants had probable cause in this case: they were speaking to someone who confirmed he was Meidel; given Sergeant Clark's ongoing investigation, he knew Meidel was a convicted felon; and both sergeants saw what looked like a gun tucked into his waistband. Meidel's dishonest assertion that it was a pellet gun did not undermine the sergeants' probable cause.

The only question on appeal then is whether there were exigent circumstances permitting the sergeants to enter the curtilage of Meidel's home without a warrant. "We review *de novo* the ultimate conclusion that the historical facts amounted to exigent circumstances." Id. Exigent circumstances, such as the safety of officers and others, may justify a warrantless arrest in one's home. See United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003) ("Exigent circumstances exist where law enforcement officers have a legitimate concern for the safety of themselves or others." (quotation omitted)).

Under the totality of the circumstances, it was reasonable for the sergeants to believe Meidel posed a danger—both to themselves and to others—that could be neutralized by entering the premises to secure both Meidel and the gun. Meidel, a convicted felon, was in possession of what looked like a gun. More than that, here the officers had made their presence and suspicion of Meidel's illegal possession known. They asked about the gun and confirmed his identity. Although both sergeants acknowledged Meidel was initially cordial when speaking to them, Sergeant Eidson explained Meidel's demeanor changed as soon as he asked about the gun. Meidel continued to move toward the dumpster, which would have shielded him from direct view. Sergeant Clark had also received several reports that Meidel had discharged a weapon near his home, which would have heightened concern that Meidel would use the gun in his possession. A reasonable officer, when faced with these circumstances, would have had legitimate concerns for his safety and the safety

of others to justify entering Meidel's yard to arrest him and secure the gun. See United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996) ("It would be reasonable for . . . an officer to believe that the presence of an armed suspect inside the house presented a threat to the lives of the officers outside.").

Meidel points out that exigent circumstances cannot be manufactured by law enforcement. Kentucky v. King, 131 S. Ct. 1849, 1862 (2011) ("[T]he exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment."). The Supreme Court in King emphasized that "the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable" within the meaning of the Fourth Amendment. Id. at 1858.

Meidel claims the sergeants created the exigent circumstances by threatening to illegally enter the front yard and place him under arrest. According to Meidel, he did not reach behind his back toward the gun until the officers threatened to make a warrantless arrest. Even if we credit this argument, we need not hold to Meidel's narrow view of the exigent circumstances. Before Sergeant Eidson told Meidel he was under arrest, the sergeants reasonably believed Meidel was a felon with a gun on his person and made their suspicions known to Meidel. Neighbors had previously reported Meidel discharging a gun, and he was near a dumpster that could provide cover should he begin shooting. Consequently, the district court did not err in finding exigent circumstances justified the sergeants' warrantless entry onto Meidel's property.

### III. Conclusion

Accordingly, we affirm.

_____